UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

CHRISTINE ALBERTO,                                              Civil Action No.

                          Plaintiff,                            **COMPLAINT**

          -against-
                                                                **JURY TRIAL DEMANDED**
MICHAEL MORALES OF THE NEW YORK CITY POLICE
DEPARTMENT; WILLIAM PERRY OF THE NEW YORK
CITY POLICE DEPARTMENT; OFFICERS JOHN DOE OF                    ECF Case
THE NEW YORK CITY POLICE DEPARTMENT; NEW
YORK CITY POLICE COMMISSIONER, WILLIAM J.
BRATTON; FIONNUALA O'DOHERTY, ASSISTANT
DISTRICT ATTORNEY OF THE NEW YORK COUNTY
DISTRICT ATTORNEY'S OFFICE; MIREILLE DEE,
ASSISTANT DISTRICT ATTORNEY OF THE NEW YORK
COUNTY DISTRICT ATTORNEY'S OFFICE; CYRUS R.
VANCE, JR., DISTRICT ATTORNEY OF THE NEW YORK
COUNTY DISTRICT ATTORNEY'S OFFICE; THE NEW
YORK COUNTY DISTRICT ATTORNEY'S OFFICE; AND
THE CITY OF NEW YORK

                          Defendants.
_____X

<u>**COMPLAINT**</u>

PLAINTIFF, CHRISTINE ALBERTO, an individual, seeks relief for the DEFENDANTS NEW

YORK CITY POLICE DEPARTMENT POLICE OFFICERS MICHAEL MORALES,  WILLIAM

PERRY and  OTHER OFFICERS THAT SHALL BE NAMED UPON FURTHER INVESTIGATION

("JOHN  DOE");  WILLIAM  J.  BRATTON,  NEW  YORK  CITY  POLICE  COMMISSIONER;

FIONNUALA O'DOHERTY, ASSISTANT DISTRICT ATTORNEY OF THE NEW YORK COUNTY

DISTRICT ATTORNEY'S OFFICE; MIREILLE DEE, ASSISTANT DISTRICT ATTORNEY OF THE

NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE; CYRUS R. VANCE, JR., OF THE NEW

YORK  COUNTY  DISTRICT  ATTORNEY'S  OFFICE;  THE  NEW  YORK  COUNTY  DISTRICT

ATTORNEY'S OFFICE; and THE CITY OF NEW YORK's violations of her rights secured by the Civil

Rights Act of 1871, 42 U.S.C. § 1983, by the United States Constitution, including its Fourth and

1

Fourteenth Amendments, and by the laws and Constitution of the State of New York, including: false arrest, false imprisonment, malicious prosecution, negligent infliction of emotional distress, intentional infliction of emotional distress, loss of enjoyment of life, and abuse of process. Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems proper.

The Complaint of the Plaintiff, through Montell Figgins, Esq., attorney for Plaintiff, respectfully shows and alleges as follows:

## JURISDICTION AND VENUE

1.       This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C.  §§ 1331 and 1343, this being an action for redress for the violation of Plaintiffs' constitutional and civil rights.

2.       Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

3.       Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendant City of New York is administratively located within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## PARTIES

4.       Plaintiff, Christine Alberto (Alberto), is a resident of 87 Lonsdale Main Street 2nd floor, Lincoln, Rhode Island 02865-1845.

5.       Upon information and belief, Defendants, Detective Michael Morales, Detective William Perry, and along with other officers ("John Doe"), who shall be named upon further investigation

(herein referred to as "Arresting officers"), resided in the City of New York, County of New York, State of New York, and were employed as police officers by the City of New York at the time the actions commenced. Defendants are sued in both their individual and official capacities.

6.      Defendant William J. Bratton is and was, at all times relevant herein, the New York City Police Department Commissioner and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the actions, policies, practices, and/or customs complained herein. He is sued in both his individual and official capacity.

7.      Upon information and belief, Defendant, Fionnuala O'Doherty, Assistant District Attorney in New York, resides in the City of New York, County of New York, State of New York, and is employed as an assistant district attorney by the City of New York. She is sued in both her individual and official capacity.

8.      Upon information and belief, Defendant, Mireille Dee, Assistant District Attorney in New York, resides in the City of New York, County of New York, State of New York, and is employed as an assistant district attorney by the City of New York. She is sued in both her individual and official capacity.

9.      Upon information and belief, Defendant, Cyrus R. Vance, Jr., District Attorney in New York, resides in the City of New York, County of New York, State of New York, and is employed as a district attorney by the City of New York. He is sued in both his individual and official capacity.

10.     Upon information and belief, Defendant, New York County District Attorney's Office ("Manhattan DA") is an agency of the City of New York, and has its main office located at One Hogan Place in the City of New York, County of New York, State of New York.

11.     Defendant City of New York is and was at all times herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City of New York assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant City of New York is authorized to

maintain a district attorney's office which acts as its agent in the area of criminal prosecution and for which it is ultimately responsible. Defendant City of New York assumes the risks incidental to the maintenance of a district attorney's office and the employment of district attorneys. Defendant City of New York was at all times relevant herein the public employer of Defendants Michael Morales, William Perry, other officers who shall be determined upon further investigation, Fionnuala O'Doherty, Mirielle Dee, and Cyrus R. Vance, Jr.

## JURY DEMAND

12.     Plaintiffs demand a trial by jury in this action on each and every one of their claims pursuant to FED. R. CIV. P. 38.

## NOTICE OF CLAIM

13.     Notice of Complaint filed June 12, 2015 at 3:54 PM pursuant to Court of Claims Act § 10.

14.     The Notice of Claim was in writing, sworn by Plaintiff, Ms. Alberto, and contained the name and address of Plaintiff.

15.     The Notice of Claim set out the nature of the claim, the time when and the place where and manner by which the claim arose, and the damages and injuries claimed to have been sustained by Plaintiff.

## FACTUAL ALLEGATIONS

16.     Ms. Alberto repeats each and every allegation as if fully set forth herein.

17.     Ms. Alberto is the sole business owner of Rave PCS, LLC ("Rave PCS") and Rave PCS stores located at 554 Westside Ave., Jersey City, NJ 07304 ("Jersey City PCS")and 3834 Broadway, New York, NY 10032 ("New York PCS").

18.     Ms. Alberto incorporated Rave PCS of Jersey City 554 Corp. in Queens, New York. Incorporation was filed on October 8, 2013.

19.     Business related transactions (including buying products and monies collected) from both store locations were deposited and deducted from the Rave PCS of Jersey City account, which Ms. Alberto was the sole account holder.

20.     Issa Chouman (Chouman) alleged that Ms. Alberto burglarized the 3851 Broadway Rave PCS store on or about June 13, 2014 and or about June 14, 2014 at approximately 11:00 PM. Chouman claimed or insinuated that he was the sole owner of the Rave PCS store.

21.     Chouman's statements alleging that Ms. Alberto burglarized Jersey City PCS and New York PCS by entering store premises and taking about $6,000 and stealing phones were not verified by any evidence. The NYPD and Manhattan DA simply accepted Chouman's version of events without verifying what exactly was taken and how much was taken from New York PCS. Absent this verification, it us unknown why the Manhattan DA decided to go forward with this case since nothing shows that Ms. Alberto's actions met the elements of the crimes for which she would be later charged.

22.     Manhattan DA accepted purported paperwork from Chouman as proof that Ms. Alberto had committed burglary and grand larceny. The paperwork lacked any specificity to verify whether anything was actually purchased and whether anything had actually been taken from the Broadway location.   The paperwork consisted of unauthenticated and legally inadmissible information. Moreover, there are no identifiable dates on the document detailing when monies were received or withdrawn (business-related credits and debits).  The paperwork did not contain information that delineated for cash or credit. The paperwork did not show any deductions taken to verify the allegation that $6,000 had been taken. The actual figure of what was taken is paramount to determine whether Ms. Alberto had committed burglary and grand larceny as the felony of grand larceny has a specific monetary threshold that is needed to be met in order for one to be charged with that crime. The grand larceny charge was paramount for Manhattan DA to bring forth its burglary charges against Ms. Alberto as she could not be charged with burglary absent the grand larceny charge.

23.    Manhattan DA accepted the aforementioned paperwork as showing itemized orders for the alleged stolen phones. The Manhattan DA accepted Chouman's statements that those phones were stolen from New York PCS. However, Manhattan DA failed to investigate whether phones were actually stolen from the location.

24.    Manhattan DA failed to verify who had done the ordering the aforementioned paperwork purported to show, and which account paid for the phones. This is paramount to proving the crime of grand larceny as Ms. Alberto was the sole account holder of the account that had paid for the alleged stolen phones, thus the phones belonged to Ms. Alberto. In light of this fact, there was no possible way for Ms. Alberto to have committed larceny as she had a property interest and legal claim to the phones.

25.    Manhattan DA failed to properly investigate whether Chouman's allegations were truthful. Proper investigation would have found that Christine Alberto was a business associate and owner of the Rave PCS stores that were the subject of the alleged burglary and grand larceny crimes. Proper investigation would have found that Christine Alberto was the sole owner of Rave PCS of New Jersey 554 Corp., which is the entity that owned all of the allegedly stolen phones. Proper investigation would have shown that Chouman was not the owner of this entity. Proper investigation would have shown that Christine Alberto was the sole holder of the bank account that processed all payments, received all revenues, and paid all bills associated with this business. Proper investigation would have shown that Chouman's name did not appear anywhere on the business records. These facts vitiate any grand larceny charges against Christine Alberto since she had property interests in the alleged stolen goods. Since there is no merit to the grand larceny charges against Christine Alberto, Christine Alberto cannot be charged with burglary as she did not enter the premises with the intention of committing a crime.

26.    Despite Chouman's shaky evidence and the facts showing that Christine Alberto had property rights to the stolen goods as the sole owner of Rave PCS of New Jersey 554, Manhattan DA initiated prosecutorial proceedings against Ms. Alberto and began proceedings to charge her with

a (2) count indictment for Burglary and Grand Larceny in the Third Degree (P.L. § 140.20) and (P.L. 155.35 (1)).

27.   In the grand jury hearings, Manhattan DA presented Chouman as a witness. Chouman falsely testified that Ms. Alberto was a former employee who had stolen monies and store property belonging to him. Furthermore, Manhattan DA also presented unauthorized and unverified paperwork as evidence to the Grand Jury to obtain an indictment against Ms. Alberto.

28.   Ms. Alberto was never availed the opportunity to assert her 190.50 rights to testify before the grand jury because she had no idea that an indictment was being sought against her.

29.   Ms. Alberto was ultimately indicted on an N/A indictment.

30.   This lack of research, proper investigation, and blatant ignoring of facts led to Ms. Alberto being officially charged with Burglary in the Third Degree, in violation of Penal Law § 140.20, for knowingly entering and remaining unlawfully in the building of Chouman with the intent to commit a crime therein; Grand Larceny in the Third Degree, in violation of Penal Law § 155.35(1), for stealing property with the value exceeding $3,000 ($6,000 alleged).

31.   This improperly-obtained indictment had later consequences for Ms. Alberto in regards to her bail amount and time spent in jail. Moreover, this indictment could have had consequences regarding Ms. Alberto's sentencing had she been convicted of the crimes for which she was indicted.

32.   The indictment resulted in a warrant being issued for Ms. Alberto's arrest.

33.   During this time, Ms. Alberto had moved from New York City to Rhode Island unaware that prosecutorial proceedings against her were occurring.

34.   On or about late July, 2014, arresting officers, including Defendant Michael Morales, harassed and threatened Ms. Alberto's father, stepmother, and five of her siblings with deportation, among other threats, in order to locate Ms. Alberto. Arresting officers continued this harassment continuously despite the fact that Ms. Alberto's father had communicated to the officers that he had no factual knowledge of Ms. Alberto's location at the time. It was not until Ms. Alberto's father spoke to Ms. Alberto that he ascertained her location.

35.   The continued harassment of Ms. Alberto's father, stepmother, and five minor siblings was unwarranted as the officers could have questioned the alleged victim, Chouman, of Ms. Alberto's whereabouts as he had knowledge of Ms. Alberto's residence in Rhode Island.

36.   In August 2014, arresting officers of the NYPD, including Defendant William Perry, traveled to Rhode Island to carry out the arrest warrant. The arresting officers harassed members of Christine Alberto's family, including minors, in an attempt to arrest Christine Alberto. The arresting officers were seen following members of Ms. Alberto's family in rental cars, and entered her cousin's house after utilizing threatening tactics to further threaten and interrogate two of Ms. Alberto's cousins, who were minors.

37.   When discovering Ms. Alberto's address, arresting officers traveled to her place of residence and demanded that she surrender herself to the NYPD at her place of residence. The arresting officers made no attempt to follow proper procedures to have the warrant validated in Rhode Island. Ms. Alberto refused to go with the arresting officers because they did not provide proof that they were members of the NYPD as they were dressed in plain clothing and did not provide badges. Ms. Alberto called her attorney at the time to find out what her rights were. When Ms. Alberto's attorney informed her that arresting officers did not follow proper procedures and no record for her arrest was found, he informed her that she did not need to go with arresting officers. When Ms. Alberto asserted her rights, the arresting officers became agitated and angry.

38.   Ms. Alberto went to the criminal court in Rhode Island to make sense of the situation. The judge made reference to the outrageous conduct of the arresting officers, but ultimately incarcerated Ms. Alberto at the local jail for two (2) days.

39.   The presiding judge freed Ms. Alberto so that she may travel to New York to answer her charges.

40.   Ms. Alberto went to New York in October to answer her charges.

41.   Ms. Alberto was officially arrested on October 22, 2014 for the aforementioned charges. She was arraigned and subsequently incarcerated at Rikers Island Correctional Facility ("Rikers") for ten (10) days.

42. While waiting to be processed and transported to Rikers, Ms. Alberto was handcuffed at the nearby police precinct. There, Defendant Michael Morales walked her around the fugitive department and displayed her to his fellow officers. He furthered this mockery by stating, "Princess decided to show up."

43. While at Rikers, Ms. Alberto was erroneously listed as 31 years-old and put in the section for incarcerated persons 22 years or older. This caused problems for Ms. Alberto's mother as she could not find Ms. Alberto in the system to bail her out.

44. After ten days at Rikers, Ms. Alberto posted her bail of $10,000 and was free for the following four days.

45. At the same time, Ms. Alberto had an outstanding warrant for her arrest in New Jersey for charges relating to the aforementioned charges as Chouman also claimed she had burglarized and stolen goods at the Jersey City PCS.

46. On November 10, 2014, Christine Alberto went to the New York Criminal Court for a motion appearance and discussed traveling to New Jersey to confront her related charges in New Jersey. Judge Jill Konviser let her go on her own free will as she had posted bail and the Manhattan DA did not charge Ms. Alberto with any other charges additional to the charges for which she had already spent ten days at Rikers.

47. As Ms. Alberto was exiting the New York Criminal Court, an arresting officer, Defendant Officer John Doe who shall be named upon further investigation, falsely and negligently arrested and imprisoned Christine Alberto. Without legal justification, the arresting officer apprehended Christine without charging her with any offense and confined her to the Riker's Correctional Facility for two (2) weeks.

48. After needlessly spending two (2) weeks at Rikers, Ms. Alberto was transported to New Jersey. There she overheard the two New Jersey transporting officers state that they were not informed that Ms. Alberto was waiting to be transported until the day of transportation.

49.    Ultimately, in the above matter, Christine Alberto was granted a dismissal of her burglary and grand larceny charges.  The court also exonerated Christine Alberto of her bail money. Therefore, the above proceedings were terminated in Plaintiff Christine Alberto's favor.

50.    As a consequence to the malicious prosecution and false arrest and imprisonment, Ms. Alberto lost her job as a caretaker in Rhode Island due to having a criminal record that was not cleared until many months later. Ms. Alberto could not obtain work until July 2015.

51.    As a consequence to the malicious prosecution and false arrest and imprisonment, Ms. Alberto continues to suffer from anxiety, paranoia, and clinical depression. Ms. Alberto is currently going through therapeutic treatment due to the trauma experienced during the aforementioned events.

### CAUSES OF ACTION

### FIRST COUNT
**Malicious Prosecution**

52.    Ms. Alberto repeats each and every allegation as if fully set forth herein.

53.    Defendants   Mirielle Dee, Fionnuala O'Doherty, and Cyrus R. Vance, Jr., acting in their capacities as assistant district attorney and district attorney respectfully for Manhattan DA, impaired the integrity of the Grand Jury proceedings by: giving misleading and improper legal instructions to the Grand Jury; not following the rules of evidence in the presentation of evidence before the Grand Jury as set forth by C.P.L. § 190.30(1); having the proceeding before fewer than sixteen grand jurors, or fewer than twelve grand jurors who had heard all of the essential testimony concurred in the finding of the indictment pursuant to C.P.L. § 210.35(2)(3); not having every testifying witness before the Grand Jury sworn and under oath; having unauthorized persons in the Grand Jury room pursuant to C.P.L. § 190.25(3); and failing to exercise a duty of fair dealing to the accused and to the service of justice pursuant to C.P.L. § 210.35(5).

54.    Defendants failed to fully investigate the facts of the allegations made by Chouman against Ms. Alberto. Had Defendants fully investigated the facts, Defendants would have seen that Ms. Alberto was the sole owner of Rave PCS and therefore had property interests and the legal right

to collect the alleged stolen items all monies collected for business-related transactions. Ms. Alberto was the sole account holder of the Rave PCS business account. With that right, Ms. Alberto did not enter New York PCS with the intention of committing a felony nor did she take goods belonging to someone else. Therefore, the elements of burglary and grand larceny could not be met. Defendants then should not have sought an indictment against Ms. Alberto by presenting her case to a Grand Jury.

55.    Obtaining the indictment against Ms. Alberto was unwarranted given the information above.

56.    It was clear that there was no evidence to show that the elements of burglary and grand larceny had been met. In light of these facts, the court ultimately terminated the proceeding in Ms. Alberto's favor by dismissing the charges.

57.    In light of the information above, Defendants lacked probable cause to seek an indictment against Christine Alberto.

58.    Defendants commenced and continued the criminal proceeding against Ms. Alberto despite being given information and evidence that clearly showed that the crimes of burglary and grand larceny had not been committed by Ms. Alberto. This wanton, reckless, or grossly negligent disregard of Ms. Alberto's rights illustrates malice on the part of the Defendants.

59.    Defendants failed to exercise a reasonable and prudent person standard when proceeding in seeking charges against Ms. Alberto.

60.    In a criminal action, the elements required to establish malicious prosecution against a defendant are that: (1) defendants commenced or continued a criminal proceeding against the plaintiff; (2) that the prosecution terminated in plaintiff's favor; (3) the absence of probable cause; and (4) actual malice.

61.    Based on the facts detailed above, it is clear that the Defendants' actions met the elements of malicious prosecution arising from a criminal action.

62.    As a proximate result of Defendants' unlawful conduct, Ms. Alberto has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to

compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Ms. Alberto has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.

## SECOND COUNT
### False Arrest

63.   Christine Alberto repeats each and every allegation as if fully set forth herein.

64.   The N/A indictment led to a warrant being issued for Christine Alberto's arrest. The issuance of the warrant was dependent upon the N/A indictment being issued. If the indictment lacked probable cause, then the warrant for Christine Alberto's arrest is void for lack of probable cause.

65.   New York City Police Department officers arrested Christine Alberto on October 22, 2014 absent probable cause with the intention of confining her. Christine Alberto was conscious that she was being confined, and she did not consent to the confinement. The confinement was not privileged since its issuance was grounded on the improper indictment lacking probable cause.

66.   The arresting officers did not have probable cause to make the arrest on October 22, 2014 because they failed to perform with reasonable diligence by failing to make further inquiries into Chouman's allegations of burglary and grand larceny against Ms. Alberto. Officers failed to make further inquiries to determine whether Ms. Alberto, as sole business owner of the business allegedly burglarized, had any legal rights to enter premises and/or take possession of the taken property and monies as an officer utilizing reasonable diligence would have done.

67.   The warrant obtained for Christine Alberto's arrest is void in light of the fact that it was issued as a result of Ms. Alberto's indictment. Manhattan DA lacked probable cause to move forward with its indictment against Ms. Alberto as a proper investigation would have shown that she was the sole owner of Rave PCS and could not have factually committed the crimes of burglary and grand larceny. Ms. Alberto entered the Rave PCS Broadway location with no intention of committing a

crime. Rather, she entered the premises to retrieve the business-related earnings and property paid for Rave PCS, an entity that she solely owns. In light of these facts, Ms. Alberto should not have been arrested as the acts of burglary and grand larceny did not occur.

68.   Therefore, for all the aforementioned reasons, Christine Alberto alleges that arresting officers of the NYPD falsely arrested her, pursuant to 59 NY Jur 2d, False Arrest § 128 [2010].

69.   As a proximate result of Defendants' unlawful conduct, Ms. Alberto has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Ms. Alberto has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.

## THIRD COUNT
### False Arrest

70.   Christine Alberto repeats each and every allegation as if fully set forth herein.

71.   On November 10, 2014, an arresting officer apprehended Christine Alberto outside the New York City Criminal Court. Ms. Alberto had previously posted bail of $10,000 for her release. Ms. Alberto made an appearance New York Criminal Court in front of Judge Konviser. Judge Konviser released Ms. Alberto as she had already posted her bail and was not determined a flight risk, nor did Manhattan DA add any other charges to the charge for which she had already spent ten (10) days at Rikers.  Judge Konviser knew of Ms. Alberto's related charges in New Jersey and allowed Ms. Alberto to go to New Jersey to confront her charges on her own volition. Outside the Court House, an arresting officer approached Ms. Alberto and communicated that he intended to arrest her. When Ms. Alberto attempted to explain her situation, the arresting officer told her "That's not how it works, princess" and arrested her. Extradition to New Jersey was the reason stated for Ms. Alberto's arrest.

13

72.     The arresting officer apprehended Ms. Alberto without charging her with any offense and confined her to the Riker's Correctional Facility for two (2) weeks. Ms. Alberto was conscious that she was being confined, and she did not consent to the confinement. The confinement was not privileged as Ms. Alberto had already been arraigned for the aforementioned charges and posted bail of $10,000 for her release for those charges. Manhattan DA did not charge Ms. Alberto with any additional crimes nor was Ms. Alberto considered a flight risk. This extradition related arrest was unjustified given the above information.

73.     There was no probable cause to arrest Ms. Alberto as there was no underlying crime for which she was being confined, she was not considered a flight risk, and Judge Konviser had already made a determination that Ms. Alberto should be free to travel to New Jersey to confront her charges on her own volition.

74.     Therefore, for all the aforementioned reasons, Ms. Alberto alleges that arresting officer of the NYPD falsely arrested her, pursuant to 59 NY Jur 2d, False Arrest § 128 [2010].

75.     As a proximate result of Defendant's unlawful conduct, Ms. Alberto has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Ms. Alberto has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.


### FOURTH COUNT
### False Imprisonment

76.     Christine Alberto repeats each and every allegation as if fully set forth herein.

77.     On October 22, 2014, Christine Alberto was arrested by arresting officers for the incident related to the burglary and grand larceny charges.

78.     Ms. Alberto was incarcerated at Rikers for ten (10) days.

79.     Ms. Alberto was conscious that she was being confined, and she did not consent to the confinement. The confinement was not privileged since it was issued based on the improper indictment that lacked probable cause.

80.     The arresting officers lacked probable cause to initiate the arrest or to obtain the warrant related to Ms. Alberto's burglary and grand larceny charges. The arresting officers did not obtain facts and information as they could with reasonable diligence to enable them to determine whether or not Ms. Alberto was guilty of the offense charged. If arresting officers had, they would have known that Christine Alberto was the sole business owner of the business, and therefore the owner of the Rave PCS products that she was charged with burglarizing and stealing.

81.     A plaintiff asserting a claim for false imprisonment must establish that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; (4) and that the confinement was not otherwise privileged.

82.     Based on the facts detailed above, it is clear that the Defendants' actions met the elements of malicious prosecution arising from a criminal action.

83.     As a proximate result of Defendant's unlawful conduct, Ms. Alberto has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Ms. Alberto has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.

**FIFTH COUNT**
**False Imprisonment**

84.     Christine Alberto repeats each and every allegation as if fully set forth herein.

85.     On November 10, 2014, an arresting officer apprehended Ms. Alberto outside the New York City Criminal Court. Ms. Alberto had previously posted bail of $10,000 for her release. Ms. Alberto

made an appearance New York Criminal Court in front of Judge Konviser. Judge Konviser released Ms. Alberto as she had already posted her bail and was not determined a flight risk, nor did Manhattan DA add any other charges to the charge for which she had already spent ten (10) days at Rikers. Judge Konviser knew of Ms. Alberto's related charges in New Jersey and allowed Ms. Alberto to go to New Jersey to confront her charges on her own volition. Outside the Court House, an arresting officer approached Ms. Alberto. When Christine Alberto attempted to explain the situation, the arresting officer told her "That's not how it works, princess" and arrested her. The reason stated for this arrest was extradition to New Jersey.

86.     Ms. Alberto was confined to Riker's Correctional Facility for two (2) weeks.

87.     Ms. Alberto was conscious that she was being confined, and she did not consent to the confinement. The confinement was not privileged as Christine Alberto had already been arraigned for the aforementioned charges, she had posted bail for her release in the amount of $10,000, Judge Konviser did not consider Ms. Alberto a flight risk, nor did the Manhattan DA charge Ms. Alberto with any additional crimes.

88.     There was no probable cause to arrest Christine Alberto as there was no underlying crime for which she was being confined, she was not considered a flight risk, and Judge Konviser had already made a determination that Christine Alberto should be free to travel to New Jersey to confront her charges on her own volition.

89.     Christine Alberto was released from Rikers and transported to New Jersey on November 24, 2014. Christine Alberto overhead two New Jersey transporting officers stating that the New York City Police Department did not notify them that she was in custody and ready to be transferred to New Jersey until that day [November 24, 2014].

90.     The arresting officers arrested and confined Christine Alberto despite the fact that no crime had been committed.

91.     A plaintiff asserting a claim for false imprisonment must establish that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; (4) and that the confinement was not otherwise privileged.

92.     Based on the facts detailed above, it is clear that the Defendants' actions met the elements of malicious prosecution arising from a criminal action.

93.     Therefore, for all the aforementioned reasons, Christine Alberto alleges that arresting officers of the New York City Police Department falsely imprisoned her in the November 10, 2014 arrest, pursuant to 59 NY Jur 2d, False Imprisonment § 128 [2010].

94.     As a proximate result of Defendant's unlawful conduct, Ms. Alberto has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Ms. Alberto has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.


### SIXTH COUNT
### Negligent Infliction of Emotional Distress

95.     Christine Alberto repeats each and every allegation as if fully set forth herein.

96.     Around late July 2014, arresting officers, including Defendant Michael Morales, harassed and threatened Ms. Alberto's father, stepmother, and five of her siblings with deportation, among other threats, in order to locate Ms. Alberto. Arresting officers continued this harassment continuously despite the fact that Ms. Alberto's father had no factual knowledge of Ms. Alberto's location at the time. It was not until Ms. Alberto's father spoke to Ms. Alberto where he ascertained her location. By threatening Ms. Alberto's family on multiple occasions, the officers breached their duty to not maliciously prosecute her. Knowledge of threats against Ms. Alberto's

family struck very real and debilitating fear and anxiety into Ms. Alberto, for which she still suffers.

97.    In August of 2014, arresting officers of the NYPD, including Defendant William Perry, traveled to Rhode Island to carry out the arrest warrant. The arresting officers harassed members of Christine Alberto's family, including minors, in attempt to arrest Christine Alberto. The arresting officers were seen following members of Ms. Alberto's family in rental cars, and entered her cousin's house through threatening tactics to further threaten and interrogate two of Ms. Alberto's cousins, who were minors. These incidents, compounded with the harassment of and threats made to Ms. Alberto's father, stepmother, and five siblings by arresting officers, caused Ms. Alberto to fear for her safety. Ms. Alberto still fears for her safety.

98.    When discovering Ms. Alberto's address, arresting officers traveled to her place of residence and demanded that she surrender herself to the NYPD at her place of residence. The arresting officers made no attempt to follow proper procedures to have the warrant validated in Rhode Island. Ms. Alberto refused to go with the arresting officers because they did not provide proof that they were members of the NYPD as they were dressed in plain clothing and did not provide badges. Ms. Alberto called her attorney at the time to find out what her rights were. When Ms. Alberto's attorney informed her that arresting officers did not follow proper procedures and no record for her arrest was found, he informed her that she did not need to go with arresting officers. When Ms. Alberto asserted her rights, the arresting officers became agitated. This experienced, compounded by the aforementioned harassment and threats made against members of Ms. Alberto's family, caused Ms. Alberto to fear for her safety. Ms. Alberto still fears for her safety.

99.    While waiting to be processed, on October 22, 2014, Defendant Michael Morales displayed a handcuffed Ms. Alberto around the fugitive department. The emotional distress resulting from this display and mockery compounded the fear and distress Ms. Alberto already felt from the July 2014 and August 2014 incidents.

100.   During her ten (10) week confinement at Rikers, Ms. Alberto was erroneously placed in the section reserved for incarcerated persons above the age of 21. This made it difficult for her mother to find her in the system to release her at an earlier time. This incident coupled with the previous harassment, threats, and other actions exhibited by the arresting officers of the NYPD led Ms. Alberto to believe that arresting officers wanted to harm her, and therefore, she feared for her safety.

101.   On November 10, 2014, arresting officers arrested and confined Christine Alberto to Rikers despite the fact that, for the above-mentioned reasons stated in ¶¶ 66-68, Ms. Alberto was free to go. Furthermore, Ms. Alberto had not been released and transported to New Jersey until two weeks after her November 10 detainment. While being transported to New Jersey on November 24, 2014, Christine Alberto overheard the two transporting New Jersey officers stating that the New York City Police Department did not inform them that they had someone to pick up until that same day. The arresting officer had no need to confine Ms. Alberto, and by doing so, had breached his duty to not maliciously prosecute Ms. Alberto.

102.   The experiences of the harassment happening on July 2014 and August 2014 coupled with the needless and malicious arrest on November 10, 2014 illustrates that conduct by the NYPD, through its officers, unreasonably inflicted emotional distress as it caused her to fear for her safety while under NYPD custody as they had already exhibited aggressive behavior towards her. This situation made Ms. Alberto believe that arresting officers of the NYPD were maliciously going after her thus causing her to experience real fear for her safety and emotional distress as a consequence of such fear.

103.   Due to the aforementioned incidences detailed above, Ms. Alberto argues that she has a viable claim against Defendants arresting officers under a theory of negligent infliction of emotional distress.

104.   The arresting officer's conduct unreasonably endangered Ms. Alberto's physical safety and caused her to fear for her own safety. In particular, Ms. Alberto maintains that there is ample

evidence that her arresting officers breached a duty not to maliciously prosecute her and that this breach resulted in her incarceration. Furthermore, Ms. Alberto argues that an obvious and foreseeable result of this incarceration is the unreasonable endangerment of Alberto's physical safety or, at a minimum that the incarceration caused Ms. Alberto to fear for her safety.

105.    As a result of the aforementioned incidents, Ms. Alberto has been diagnosed with clinical depression. Ms. Alberto has sought and is still receiving therapeutic treatment to deal with the debilitating fear, anxiety, paranoia, and clinical depression she still feels from her experience with the NYPD. The fact that her criminal charges were dismissed, thus vindicating her, has not lessened the severe emotional trauma she experiences as a result of the July 2014, August 2014, and November 10, 2014 incidents.

106.    Due to the above-mentioned conditions, Ms. Alberto moved to another town in Rhode Island because she legitimately fears every police automobile, rental, or black car nearby as the arresting officers of the NYPD know of her former address.

107.    Therefore, for all the aforementioned reasons, Ms. Alberto alleges that arresting officers of the NYPD negligently inflicted emotional distress for the aforementioned incidents.

108.    As a proximate result of Defendants' unlawful conduct, Ms. Alberto has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.

**SEVENTH COUNT**
**Intentional Infliction of Emotional Distress**

109.    Christine Alberto repeats each and every allegation as if fully set forth herein.

110. Ms. Alberto argues that she has a viable claim against Defendants arresting officers under a theory of intentional infliction of emotional distress.

111. The arresting officers of the NYPD exhibited extreme and outrageous conduct with the intention to cause, or showed a disregard of the substantial probability of causing severe emotional distress to which Ms. Alberto now suffers.

112. Ms. Alberto repeats allegations ¶¶ 96-103.

113. The incidents detailed in ¶¶ 96-103 illustrate extreme and outrageous conduct on the part of arresting officers of the NYPD. The serious threats and harassment made against multiple members of Ms. Alberto's family, including minor children, and the actions committed against Ms. Alberto are outrageous in character, and are so extreme in degree as to go beyond bounds of decency to be regarded as atrocious, and utterly intolerable in civilized community.

114. The incidents detailed in ¶¶ 96-103 caused severe emotional distress that Ms. Alberto experienced at the time and continues to experience. Ms. Alberto has been diagnosed with clinical depression by a medical professional. Ms. Alberto has sought and is still receiving therapeutic treatment to deal with the debilitating fear, anxiety, paranoia, and clinical depression she still feels from her experience with the NYPD. The fact that her criminal charges were dismissed, thus vindicating her, has not lessened the severe emotional trauma she experiences as a result of the July 2014, August 2014, and November 10, 2014 incidents. Ms. Alberto fears every police vehicle and rental car nearby and cannot leave her place of residence due to this extreme fear and anxiety. Ms. Alberto only leaves her place of residence when she needs to work, make doctor's appointments, or perform basic errands because those actions are done out of necessity. Ms. Alberto still experiences fear, paranoia, and anxiety when performing those necessary tasks. The fear and anxiety Ms. Alberto experiences is debilitating.

115. Therefore, for all the aforementioned reasons, Ms. Alberto alleges that arresting officers of the NYPD, including Defendants Michael Morales, William Perry, and other officers to be named upon further investigation, intentionally inflicted emotional distress onto Ms. Alberto.

116.     As a proximate result of Defendants' unlawful conduct, Ms. Alberto has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Ms. Alberto has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.

### EIGTH COUNT
**Abuse of Process**

117.     Ms. Alberto repeats each and every allegation as if fully set forth herein.

118.     Ms. Alberto alleges that the arresting officer of the NYPD who apprehended and confined her on November 10, 2014 did so with the intention to do harm without excuse or justification and to obtain a collateral objective.

119.     The arresting officer informed Ms. Alberto that they had the legal right to detain her as she had an outstanding warrant out for her arrest in New Jersey despite the fact, stated in ¶¶ 71-73, she was actually free to go to New Jersey to confront her charges on her own volition. Even if the court accepts that to be true, the arresting officer was on notice that Judge Konviser gave Ms. Alberto permission to leave due to the facts stated in ¶¶ 71-73. There was no justification for the arresting officers to needlessly detain Ms. Alberto and hold her in Rikers for two additional weeks. It is inferred with the arresting officers' previous harassing behavior, anger from Ms. Alberto asserting her rights in Rhode Island in August 2014, and their statements and attitude made to her previous to her November 10, 2014 arrest that the arresting officer intended to harm Ms. Alberto.

120.     It is further alleged that the arresting officers confined Ms. Alberto in order to receive overtime payment. Officers of the NYPD were known to make arrests for the purpose of earning overtime pay. Ms. Alberto alleges that the arresting officer received, and knew he would receive, the added benefit of receiving overtime pay for the time they spent arresting her on November 10, 2014.

121.    Therefore, for all the aforementioned reasons, Ms. Alberto alleges that the arresting officer of the NYPD abused the process in arresting and confining her on November 10, 2014.

122.    As a proximate result of Defendant's unlawful conduct, Ms. Alberto has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Ms. Alberto has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.


**NINTH COUNT**
**Loss of Enjoyment of Life**

123.    Christine Alberto repeats each and every allegation as if fully set forth herein.

124.    Ms. Alberto spent a total of twenty six (26) days needlessly incarcerated.

125.    Due to actions detailed in the statement of facts and the previous counts, Ms. Alberto could not find work from the date of her arrest on October 22, 2014 to July 2015 due to having a criminal record. The criminal record was only a result of the actions of Defendants who did not properly investigate or adhere to a reasonable prudent person's standard when investigating Chouman's allegations before seeking an indictment against Ms. Alberto as detailed in ¶¶ 21-31.

126.    Due to the actions detailed in the statement of facts and the previous counts, Ms. Alberto suffers from debilitating anxiety, fear, and paranoia. Furthermore, Ms. Alberto was diagnosed with clinical depression by a medical professional. The clinical depression was triggered by all the actions committed by Defendants, as detailed in the statement of facts and previous counts. Due the symptoms from the above conditions, Ms. Alberto's life has detrimentally altered. Ms. Alberto is unable to participate in activities or pleasures of life that she formerly enjoyed. In fact, she could not even enjoy living at her previous town due to the debilitating fear, anxiety, and paranoia she feels when stepping out in public.

127.    As a proximate result of Defendants' actions, Ms. Alberto has suffered loss of enjoyment of life and is therefore entitled to recover damages for that loss.


**TENTH COUNT**
**42 U.S.C. § 1983 and Fourth Amendment by Plaintiff Against Defendants**

128.    Christine Alberto repeats each and every allegation as if fully set forth herein.

129.    Ms. Alberto in this action is a citizen of the United States and all Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

130.    At the time of the complained of events, Ms. Alberto had the clearly established constitutional right to be free from malicious prosecution without probable cause under the Fourth Amendment and in violation of due process under the Fourteenth Amendment.

131.    Any reasonable police officer and prosecutor knew or should have known of these rights at the time of the complained of conduct as they were clearly established at the time.

132.    By their conduct, as described herein, and acting under color of state law to deprive Ms. Alberto of her right to be free of unreasonable search and seizure under the Fourth Amendment, the individual Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution. The individual Defendants have violated Ms. Alberto's Fourth Amendment rights to be free of unreasonable search and seizure and free from having an indictment against her and, consequently, a warrant issued for her arrest absent probable cause by unlawfully and negligently arresting and confining her.

133.    Individual Defendants violated Ms. Alberto's Fourth and Fourteenth Amendment rights to be free from malicious prosecution without probable cause and without due process when they worked in concert to secure false charges against her, resulting in unlawful confinement and prosecution.

134.    Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and reckless disregard of Ms. Alberto's federally protected constitutional rights.

135.   The procurement of prosecution against Ms. Alberto for the known to be false allegations of burglarizing her own business and stealing her own property and monies without giving her the chance to testify in front of the grand jury was malicious, shocking, and objectively unreasonable in light of the circumstances.

136.   Those criminal proceedings terminated in Ms. Alberto's favor by prior proceeding. Judge Konviser dismissed the charges due to Ms. Alberto having committed no crimes in light of the facts.

137.   The acts or omissions of all individual Defendants were moving forces behind Ms. Alberto's injuries.

138.   These individual Defendants acted in concert and joint action with each other.

139.   The acts or omissions of Defendants as described herein intentionally deprived Ms. Alberto of her constitutional and statutory rights and caused her other damages.

140.   Defendants are not entitled to qualified immunity for the complained of conduct.

141.   The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in its actions pertaining to Plaintiff.

142.   As a proximate result of Defendant's unlawful conduct, Ms. Alberto has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Ms. Alberto has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.

143.   Ms. Alberto is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. 1988, prejudgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

144.     In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled

to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983,

in that the actions of each of these individual Defendants have been taken maliciously, willfully,

or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

### ELEVENTH COUNT
**Violation of 42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth and Fourteenth Amendments in violation of 42 U.S.C. § 1981**

145.     Christine Alberto repeats each and every allegation as if fully set forth herein.

146.     42 U.S.C. § 1983 prohibits the deprivation under color of state law of rights secured under the

United States Constitution by every person.

147.     Ms. Alberto in this action is a citizen of the United States and Defendants to this claim are

persons for purposes of 42 U.S.C. § 1983.

148.     The Defendants to this claim at all times relevant hereto were acting under the color of state law.

149.     Ms. Alberto had the clearly established right to be free from malicious prosecution at the time of

the complained conduct.

150.     Defendants knew or should have known of these rights at the time of the complained of conduct

as they were clearly established at that time.

151.     The acts or omissions of these Defendants, as described herein, deprived Ms. Alberto of her

constitutional and statutory rights and caused her other damages.

152.     The acts or omissions of Defendants as described herein intentionally deprived Ms. Alberto of her

constitutional and statutory rights and caused her other damages.

153.     Defendants are not entitled to qualified immunity for the complained of conduct.

154.     All listed Defendants were, at all times relevant, policymakers for the City of and County of New

York, The New York County District Attorney's Office, the New York City Police Department,

and in that capacity established policies, procedures, customs, and/or practices for the same.

155.    These Defendants developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Ms. Alberto's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

156.    Defendants William J. Bratton, Cyrus R. Vance, New York County District Attorney's Office, and City of New York have created and tolerated an atmosphere of lawlessness, and have developed and maintained a long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner accounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

157.    It is a policy, procedure, custom, and/or practice for District Attorneys at Manhattan DA to go forward with presenting unverified and false evidence in front of grand juries for the purpose of obtaining a quick and improper indictment against individuals.

158.    It is a policy, procedure, custom, and/or practice for officers of the NYPD to go forward with unreasonably seizing individuals despite lack of evidence or probable cause to support such seizures.

159.    In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result.  In the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

160.    The deliberately indifferent training and supervision provided by Defendant City of New York, NYPD, and Manhattan DA were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

161.    As a proximate result of Defendant's unlawful conduct, Ms. Alberto has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Ms. Alberto has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.

162.    Finally, Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to redress Defendants' above described ongoing deliberate indifference in policies, practices, habits, customs, usages, training, and supervision with respect to the rights described herein, and with respect to the ongoing policy and/or practice of failing to investigate or appropriately handle complaints of the same, which Defendants have no intention for voluntarily correcting.

## **PRAYER FOR RELIEF**

Plaintiff, Christine Alberto, prays that this Court enter judgment for Plaintiff and against each of

the Defendants and grant:

A. Compensatory and consequential damages, including damages for negligent infliction of emotional distress, loss of enjoyment of life, and intentional infliction of emotional distress on all claims allowed by law in an amount of $500,000 to be determined by trial;

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined by trial;

D. punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

E. attorneys' fees and costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F. pre- and post-judgment interest at the lawful rate; and,

G. any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted this second day of December, 2015.

/s/ Montell Figgins, Esq.
Montell Figgins, Esq.
The Law Offices of Montell Figgins
17 Academy St., Suite 601
Newark, NJ 07102
(973) 242-4700 (t)
(973) 242-4701 (f)