EXHIBIT "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 31

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | **AFFIRMATION IN RESPONSE TO THE DEFENDANT'S OMNIBUS MOTION** |
| -against- | |
| CHRISTINE ALBERTO, | Ind. No. 03944/2014 |
| Defendant. | |

MIREILLE DEE, an attorney admitted to practice before the Courts of this State, affirms under penalty of perjury that:

1.   I am the Assistant District Attorney in New York County assigned to this case and am familiar with its facts.

2.   This affirmation is submitted in response to the  defendant's second omnibus motion in which the defendant seeks inspection of the Grand Jury minutes and the dismissal of the indictment, and in support of the People's request for reciprocal discovery.

### PEOPLE'S RESPONSE TO THE DEFENDANT'S MOTION TO INSPECT THE GRAND JURY MINUTES AND TO DISMISS THE INDICTMENT

3.   The People consent to the Court's second in camera review of the Grand Jury minutes.  Inspection will reveal that the evidence before the Grand Jury amply supports

the offense(s) charged, that the Grand Jury was properly instructed on the law, and that the integrity of the proceedings was unimpaired. The People deny all allegations to the contrary and oppose disclosure of the Grand Jury minutes to the defense.

4. Defendant further claims that she is the co-owner of the Metro PCS located at 3851 Broadway, New York, New York, and therefore she could not have 'burglarized' it as charged on June 13, 2014. The People refer to the subpoenaed lease of said location, which will be filed and served with this response, that lists the sole owner of this location as Issa Chouman, the complaining witness. All of the documentation that the defendant submitted in her motion to dismiss the indictment refer to the **New Jersey** Metro PCS location, not a subject of this criminal action. There being legally sufficient evidence before the Grand Jury, and proof that the complaining witness is the sole owner of the Metro PCS, the defendant's motion to dismiss the indictment should be denied.

## PEOPLE'S REQUEST FOR RECIPROCAL DISCOVERY

5. Pursuant to CPL §250.20, the People hereby demand that the defendant supply (a) the place or places where the defendant claims to have been at the time of the commission of the crime, and (b) the names, residential addresses, places of employment and addresses thereof of every alibi witness upon whom the defendant intends to rely to establish the defendant's presence elsewhere than at the scene of the crime at the time of its commission.

Wherefore, it is respectfully requested that, except as consented to herein, the

defendant's motion should be denied.

Dated:          New York, New York
                March 30, 2015

                                        Respectfully submitted,

                                        Cyrus R. Vance, Jr.
                                        District Attorney
                                        New York County

                                        By:  _____
                                             Mireille Dee
                                             Assistant District Attorney
                                             Of Counsel
                                             212 335-9108

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

CHRISTIN ALBERTO,

Defendant.

AFFIRMATION IN RESPONSE TO THE DEFENDANT'S
OMNIBUS MOTION

IND. NO. 03944/2014

Cyrus R. Vance, Jr.
District Attorney
New York County
One Hogan Place
New York, New York 10013
(212) 335-9000

Mireille Dee
Assistant District Attorney
Of Counsel

7/04

## STANDARD FORM OF STORE LEASE
### The Real Estate Board of New York, Inc.

**Agreement of Lease**, made this _30_ day of December, 2013, between **GVS PROPERTIES, LLC**, having an address at c/o Alma Realty Corp., 31-10 37th Avenue, Suite 500, Long Island City, New York 11101, party of the first part, hereinafter referred to as **OWNER**, and **ISSA CHOUMAN**, having an address at 20-40 42nd Street, Astoria, New York 11105, party of the second part, hereinafter referred to as **TENANT,**

**Witnesseth:** Owner hereby leases to Tenant, and Tenant hereby hires from Owner, **STORE 1** in the building known as **3851-3859 BROADWAY A/K/A 600 WEST 161st STREET, NEW YORK, NEW YORK 10032** for a term of ten (10) years (or until such term shall sooner cease and/or expire as hereinafter provided) to commence upon execution of this Lease and to expire on the last day of the calendar month in which the tenth (10th) anniversary of execution of this Lease occurs.

Both dates inclusive, at an annual rental rate of **SEE RIDER ATTACHED HERETO**

Which Tenant agrees to pay in lawful money of the United States and shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installments of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy:** 2. Tenant shall use and occupy demised premises for a WIRELESS PHONE STORE and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof, and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner, and Tenant agrees to carry, and will cause Tenant's contractors and sub-contractors to carry, such workman's compensation, commercial general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within thirty days thereafter, at Tenant's expense, by payment or filing a bond as permitted by law. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the demised premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to, or to prevent Tenant's removal of, trade fixtures, moveable office furniture and equipment, but upon removal of the same from the demised premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the demised premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the demised premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner at Tenant's expense.

**Repairs:** 4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance and shall cause the same to be operated in a good and workmanlike manner, and shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of this lease, take good care of the demised premises, including, without limitation, the storefront, and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others, making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building, including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall not be entitled to any set-off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of the lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty, which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire, Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all

state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violations, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the premises, if the premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building, if arising out of Tenant's use or manner of use of the premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner, or which shall or might subject Owner to any liability or responsibility to any person, or for property damage; Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises issued by a body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate then applicable to said demised premises.

**Sub-**
**Ordination:** 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which the demised premises are a part, and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Tenant's**
**Liability**
**Insurance**
**Property**
**Loss,**
**Damage,** 8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of, or damage to, any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building or caused by operations in construction of any private, public or quasi-public work. Tenant agrees, at Tenant's sole cost and expense, to maintain commercial general liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefor. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorney's fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agents, contractors, employees, invitees, or licensees, of any covenant on condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction,**
**Fire and**
**Other**
**Casualty:** 9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner and the rent, and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the demised premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the demised premises shall have been repaired and restored by Owner (or sooner reoccupied in part by the Tenant, then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty (or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner) specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon

the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the demised premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding anything contained to the contrary in subparagraphs (a) through (e) hereof, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible, and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b),(d), and (e) above, against the other, or any one claiming through or under each of them by way of subrogation or otherwise. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance and also, provided that such a policy can be obtained without additional premiums. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant, and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent**
**Domain:** 10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any Public or quasi-public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term, and provided further such claim does not reduce Owner's award.

**Assignment,**
**Mortgage,**
**Etc.:** 11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate tenant or the majority interest in any partnership or other legal entity which is tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric**
**Current:** 12. Rates and conditions in respect to sub-metering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to**
**Premises:** 13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times (upon 48 hours' notice, when practicable) to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are concealed within the walls, floors, or ceiling, wherever practicable. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction, nor shall the Tenant be entitled to any abatement of rent while such work is in progress, nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof, Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants of the building, and may,

during said six months period, place upon the premises the usual notice "To Let" and "For Sale" which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the building and to change the name, number or designation by which the building may be known.

**Vault,**
**Vault Space,**
**Area:**
14. No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building, is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, are to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability, nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:**
15. Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the demised premises and accepts them "as is", subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the demised premises and Tenant agrees to accept the same subject to violations, whether or not of record.

**Bankruptcy:**
16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be canceled by Owner by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant (or a guarantor of any of Tenant's obligations under this lease) as the debtor, or (2) the making by Tenant (or a guarantor of any of Tenant's obligations under this lease) of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the demised premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four per cent (4%) per annum. If the demised premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of which liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such reletting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages, by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:**
17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title II of the U. S. Code (Bankruptcy Code), or if Tenant shall have failed, after five (5) days written notice, to redeposit with Owner any portion of the security hereunder which Owner has applied to the payment of any rent and additional rent due and payable hereunder, or if Tenant shall be in default with respect to any other lease between Owner and Tenant; or Tenant shall fail to move into or take possession of the premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen (15) days' notice upon Tenant specifying the nature of said default and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such

fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days' notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required; then, and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of**
**Owner and**
**Waiver of**
**Redemption:**
18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such reentry, dispossess and/or expiration. (b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, attorney's fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights or redemption granted by or under any present or future laws.

**Fees and**
**Expenses:**
19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to attorney's fees, in instituting, prosecuting or defending any action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within five (5) days of rendition of any bill or statement to Tenant therefor, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Representations**
**by Owner:**
20. Neither Owner nor Owner's agents have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:**   21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:**   22. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure To Give Possession:**   23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, under-tenant or occupants, or if the premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession) until after Owner shall have given Tenant written notice that the premises are substantially ready for Tenant's occupancy. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except as to the covenant to pay rent. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:**   24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach, and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by the Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of the Demised Premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of the Demised Premises prior to the termination of the Lease, and the delivery of keys to any such agent or employee shall not operate as a termination of the Lease or a surrender of the Demised Premises.

**Waiver of Trial by Jury:**   25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of, or in any way connected with, this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of the demised premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any summary proceeding or action for possession, including a summary proceeding for possession of the demised premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4, except for statutory mandatory counterclaims.

**Inability to Perform:**   26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no way be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease, or to supply, or is delayed in supplying any service expressly or impliedly to be supplied, or is unable to make, or is delayed in making any repairs, additions, alterations or decorations or is unable to supply, or is delayed in supplying, any equipment, fixtures or other materials if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions or subdivisions in connection with a National Emergency or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency, or by reason of conditions which have been or are affected either directly or indirectly, by war or other emergency, of supply and demand which have been or are affected by war or other emergency, or when, in the judgment of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:**   27. Except as otherwise in this lease provided, any notice, statement, demand or other communication required or permitted to be given, rendered or made by either party to the other, pursuant to this lease or pursuant to any applicable law or requirement of public authority, shall be in writing (whether or not so stated elsewhere in this lease) and shall be deemed to have been properly given, rendered or made, if sent by registered or certified mail (express mail, if available), return receipt requested, or by

courier guaranteeing overnight delivery and furnishing a receipt in evidence thereof, addressed to the other party at the address hereinabove set forth (except that after the date specified as the commencement of the term of this lease, Tenant's address, unless Tenant shall give notice to the contrary, shall be the building), and shall be deemed to have been given, rendered or made (a) on the date delivered, if delivered to Tenant personally, (b) on the date delivered, if delivered by overnight courier or (c) on the date which is two (2) days after being mailed. Either party may, be advised, designate a different address or addresses for notices, statements, demand or other communication intended for it. Notices given by Owner's managing agent shall be deemed a valid notice if addressed and set in accordance with the provision of this Article. At Owner's option, notices and bills to Tenant may be sent by hand delivery.

**Water Charges:**   28. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof, and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises or any part thereof, be supplied with water through a meter through which water is also supplied to other premises, Tenant shall pay to Owner as additional rent, on the first day of each month,     %   ($    ) of the total meter charges, as Tenant's portion. Independently of, and in addition to, any of the remedies reserved to Owner hereinabove or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:**   29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office or any bureau, department or official of the federal, state or city government require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the first insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications and alterations, and supply additional sprinkler heads or other equipment as required whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of $         , on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Elevators, Heat, Cleaning:**   30. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such defaults, Owner shall, if and insofar as existing facilities permit, furnish heat to the demised premises, when and as required by law, on business days from 8:00 a.m. to 6:00 p.m. and on Saturdays from 8:00 a.m. to 1:00 p.m. Tenant shall at Tenant's expense, keep the demised premises clean and in order, to the satisfaction of Owner, and if demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, keep said sidewalks and curbs free from snow, ice, dirt and rubbish and maintain said sidewalks in a reasonably safe condition in compliance with requirements of law. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:**   31. Tenant has deposited with Owner the sum of $8,000.00 as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent, and additional rent, or any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including, but not limited to, any damages or deficiency in the re-letting of the demised premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the case of every such use, application or retention, Tenant shall within five (5) days after demand, pay to Owner the sum so used, applied or retained which shall be added to the Security Deposit so that the same shall be replenished to its former amount. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants

and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part; Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of such security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security, and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance. SEE RIDER.

**Captions:**   32. The Captions are inserted only as a matter convenience and for refrerace and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:**   33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, grantee, assignee, or transferee, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" used in this lease shall exclude Saturdays (except such portion thereof as is covered by specific hours in Article 30 hereof), Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Whenever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation:**   34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, a license to enter on the demised premises for the purpose of doing such work as said person shall deem necessary, to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundations, without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:**   35. Tenant and Tenant's servants; employees, agents, visitors and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any

additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Owner within fifteen (15) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:**   36. Owner shall replace at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefor shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:**   37. Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the premises, and shall not permit or conduct any obscene, nude or semi-nude live performances on the premises, nor permit use of the premises for nude modeling, rap sessions, or as a so-called robber goods shop, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the demised premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal, or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal law §235.00.

**Estoppel Certificate:**   38. Tenant, at any time and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Tenant, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, stating whether or not there exists any default by Owner under this lease, and, if so, specifying each such default and such other information as shall be required of tenant.

**Successors and Assigns:**   39. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution, or other enforcement procedure for the satisfaction of Tenant's remedies under, or with respect to, this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner

_____

**GVS PROPERTIES, LLC**
**Owner**

By: Efstathios Valiotis, Managing Member

Witness for Tenant

_____

**ISSA CHOUMAN**
**Tenant**

By: Issa Chouman

RIDER TO STANDARD FORM OF STORE LEASE
DATED AS OF DECEMBER 2̸0, 2013 BY AND BETWEEN
GVS PROPERTIES, LLC, AS OWNER, AND
ISSA CHOUMAN, AS TENANT

      If and to the extent that provisions of this Rider to Standard Form of Store Lease (hereinafter, the "Rider") conflict or are otherwise inconsistent with provisions of the Standard Form of Store Lease (hereinafter referred to as the "Standard Form") to which this Rider is attached, whether or not such inconsistency is expressly noted in this Rider, the provisions of this Rider shall prevail. All Article and/or Section cross-references used in this Rider shall refer to the corresponding provisions of the Standard Form, unless specifically stated otherwise herein. The term "Lease" shall refer to the Standard Form and Rider collectively, where appropriate without prejudice to Owner as to appropriate context.

40.   **TERM; FIXED RENT**

     A.    The term of this Lease (the "Initial Term" or "Lease Term," as the case may be) shall be ten (10) years and shall commence upon execution of this Lease ("Commencement Date") and terminate on the last day of the calendar month in which the tenth (10th) anniversary of execution of this Lease occurs ("Expiration Date").

     B.    Whenever reference is made in this Lease to "Lease Year," it shall mean, in the case of the first Lease Year, the twelve (12) month period commencing on the Commencement Date and ending on the day immediately preceding the first (1st) anniversary of the Commencement Date. Thereafter, a Lease Year shall mean each successive twelve (12) month period following the expiration of the first Lease Year.

     C.    Tenant's obligation to begin paying the fixed minimum rent shall commence on February 15, 2014 (the "Rent Commencement Date"). Notwithstanding the foregoing, the first (1st) month's rent must be paid by Tenant to Owner upon execution of this Lease without further notice or demand.

     D.    During the Initial Term, Tenant shall pay to Owner fixed monthly rent, in advance on the first day of each month during said term, without notice or demand at any time (hereinafter referred to as "Fixed Rent") as follows:

| | |
|---|---|
| YEAR 1 | $48,000.00 PER ANNUM/ $4,000.00 PER MONTH |
| YEAR 2 | $49,440.00 PER ANNUM/ $4,120.00 PER MONTH |
| YEAR 3 | $50,923.20 PER ANNUM/ $4,243.60 PER MONTH |
| YEAR 4 | $52,450.89 PER ANNUM/ $4,370.91 PER MONTH |
| YEAR 5 | $54,024.42 PER ANNUM/ $4,502.03 PER MONTH |
| YEAR 6 | $55,645.15 PER ANNUM/ $4,637.09 PER MONTH |
| YEAR 7 | $57,314.51 PER ANNUM/ $4,776.21 PER MONTH |
| YEAR 8 | $59,033.94 PER ANNUM/ $4,919.49 PER MONTH |
| YEAR 9 | $60,804.96 PER ANNUM/ $5,067.08 PER MONTH |
| YEAR 10 | $62,629.11 PER ANNUM/ $5,219.09 PER MONTH |

     E.    Tenant agrees to pay the Fixed Rent in accordance with the terms, covenants, conditions and agreements stated in the Standard Form and this Rider. It is expressly understood and agreed that Owner's breach of any duty owed to Tenant pursuant to this Lease or applicable law shall not suspend Tenant's "independent" payment obligations pursuant to this Article. Time is of the essence with respect to Tenant's payment obligations pursuant to this Article.

## 41.   ADDITIONAL RENT

A.     All sums, charges or payments other than Fixed Rent shall be deemed "Additional Rent," and in the event of nonpayment thereof, Owner shall have all rights and remedies in this Lease and under New York law for nonpayment of Fixed Rent. Fixed Rent and Additional Rent are hereinafter collectively referred to as "Rent" where no distinction is made without prejudice to Owner as to appropriate context. Tenant shall have ten (10) days from receipt of any Additional Rent bill or statement to notify Owner that it disputes the correctness of such bill or statement. After expiration of such ten (10) day period, such bill or statement shall be binding and conclusive upon Tenant. If Tenant disputes correctness of such bill or statement, Tenant shall, as condition precedent to its right to dispute such correctness, make payment of the Additional Rent so billed or stated without prejudice to its position. If such dispute is ultimately determined in Tenant's favor, Owner shall credit or refund to Tenant the amount overpaid.

B.     Tenant hereby acknowledges that late payment by Tenant to Owner of Fixed Rent or Additional Rent will cause Owner to incur costs and expenses including, but not limited to, processing and accounting charges and other administration costs and expenses.  The exact amount of such costs and expenses to Owner are impossible to predetermine. Therefore, if any Fixed Rent and/or Additional Rent is paid more than ten (10) days after the date such Fixed Rent and/or Additional Rent is due and payable, Tenant will immediately be obligated to pay to Owner without notice or demand, as Additional Rent, a Late Charge equal to ten percent (10%) of the amount in default for failure to make prompt and timely payment.  This amount is expressly agreed to by the parties as a reasonable forecast of Owner's costs and expenses, and is not a penalty.  Payment by Tenant and acceptance by Owner of a Late Charge in no event constitutes a waiver of Tenant's default with respect to such overdue amount nor shall it limit Owner's right to exercise any of its rights and remedies granted herein or otherwise available to Owner in law or in equity.

C.     It is expressly understood and agreed that Owner's breach of any duty owed to Tenant pursuant to this Lease or applicable law shall not suspend Tenant's "independent" payment obligations pursuant to this Article.

D.     Time is of the essence with respect to Tenant's payment obligations pursuant to this Article.

E.     If any check is returned to Tenant for insufficient funds otherwise dishonored, Tenant shall, without further notice or demand by Owner, immediately be obligated to pay, as Additional Rent, an "Insufficient Funds Fee" of fifty dollars ($50.00) for each such returned check. This amount is expressly agreed to by the parties as a reasonable forecast of Owner's costs and expenses, and is not a penalty.  Payment by Tenant and acceptance by Owner of an Insufficient Funds Fee in no event constitutes a waiver of Tenant's default with respect to such overdue amount nor shall it limit Owner's right to exercise any of its rights and remedies granted herein or otherwise available to Owner in law or in equity. Notwithstanding the foregoing, if any check given to Owner by Tenant shall not be honored by the bank upon which it is drawn, regardless of the reason or circumstances, Owner, at its option, may require all subsequent payments made by Tenant to Owner over the next twelve (12) months to be by certified check, cashier's check or money order.

## 42.   REAL ESTATE TAXES

A.     The following definitions shall have the meanings hereinafter stated wherever used in this Lease:

2

(i)     "Taxes" shall mean all real estate taxes, assessments, sewer rents and water charges, governmental levies, municipal taxes, county taxes or any other governmental charge, general or special, ordinary or extraordinary, unforeseen as well as foreseen, of any kind or nature whatsoever, including, without limitation, so called "BID" taxes, which are or may be assessed, levied or imposed upon all or any part of the Demised Premises, including any tax, excise or fee measured by or payment with respect to any rent, and levied against Owner and/or the land and/or the Demised Premises, under the laws of the United States, the State of New York, or any political subdivision thereof. If due to a future change in the method of taxation or in the taxing authority, a new or additional real estate tax, or a franchise, income, profit or other tax or governmental imposition, however designated, shall be levied against Owner, and/or the Demised Premises, in addition to, or in substitution in whole or in part of any tax which would constitute Taxes, or in lieu of additional Taxes, such tax or imposition shall be deemed for the purposes hereof to be included within the term Taxes. Tax bills (except as hereinafter provided) shall be conclusive evidence of the amount of such Taxes and shall be used for the calculation of the amounts to be paid by the Tenant.

(ii)    "Tax Year" shall mean each period of twelve (12) months, commencing on the first day of July of each such period, in which occurs any part of the term of this Lease or such other period of twelve (12) months occurring during the term of this Lease as hereafter may be duly adopted as the fiscal year for real estate tax purposes of the City of New York.

(iii)   "Base Tax Year" shall mean the amount of taxes levied against the Building for the Tax Year commencing July 1, 2013 and ending on June 30, 2014.

(iv)    "Tenant's Percentage Share" shall mean FIVE PERCENT (5%).

B.      (i) Tenant shall pay, as Additional Rent, for each Tax Year a sum (hereinafter, "Tenant's Tax Payment") equal to Tenant's Percentage Share of the increase in Taxes for such Tax Year above the Base Tax Year. Such Additional Rent shall be paid when the Taxes become fixed and within (20) days after demand by Owner, time being of the essence. Owner's presentation of the then current tax bill for the Building annexed to a cover letter containing a simple calculation of Tenant's Percentage Share of the Taxes shall be presumptive proof for determination of Tenant's payment of its Percentage Share of the Building's Taxes as heretofore described. Notwithstanding the foregoing, before the start of any Tax Year, Owner shall have the right to provide Tenant with a statement of Owner's estimate of Tenant's Tax payment due and payable for that Tax Year. Tenant shall, upon receipt of written notice from Owner, pay as Additional Rent on the first (1st) day of each calendar month, together with payment of Fixed Rent, an amount equal to one-twelfth (1/12th) of Tenant's Percentage Share of such Taxes. To the extent that at the time of furnishing any such bill or statement any aggregate monthly payments made for the preceding months of the Tax Year in question are less than the amount which would have been paid if the installments required pursuant to such bill or statement had been made for such preceding months, the deficiency shall be due and payable in full, as Additional Rent, together with the regular monthly installment of Fixed Rent next coming due. Owner may send a revised bill or statement to Tenant during any Tax Year, and an appropriate adjustment shall be made in the monthly installments based thereon. Within one hundred twenty (120) days after the commencement of each Tax Year, Owner shall have the right to send Tenant a bill or statement of Tenant's Percentage of Taxes for such Tax Year, together with a copy of the official tax bill, if available, and within ten (10) days after receipt of such statement and tax bill Tenant shall pay Owner, as Additional Rent, any amount by which Tenant's Percentage Share of Taxes exceeds the aggregate monthly installments paid by Tenant during such Tax Year. Any amount

3

by which such aggregate monthly installments exceed Tenant's Percentage Share of Taxes for such Tax Year shall be, at Owner's option, either credited toward the next monthly installment(s) of estimated Taxes or refunded to Tenant. In addition, Tenant shall pay reasonable expenses incurred by Owner in contesting, negotiating, attempting to reduce, minimize, defer or avoid an increase in any of the components of Taxes or the assessed valuations of all or any part of the Building, including, without limitation, the cost of tax certiorari and/or tax consultants. Notwithstanding the foregoing, at Owner's option, Owner may require that the Taxes be paid in advance on a quarterly, semi-annual or annual basis for any Tax Year, in which event Owner may bill Tenant for Tenant's Percentage Share of Taxes then due for such calendar quarter, semi-annual or annual period or immediately send a statement with respect to Taxes for such Tax Year, as the case may be, and Tenant's Percentage Share of taxes for such calendar quarter, semi-annual or annual period shall be due in its entirety within ten (10) days thereafter, in lieu of payments in monthly installments as hereinabove provided.

(ii) If the real estate tax fiscal year of the City of New York shall be changed during the term of this Lease, any Taxes for such fiscal year, a part of which is included within a particular Tax Year and a part of which is not so included, shall be apportioned on the basis of the number of days in such fiscal year included in the particular Tax Year for the purpose of Owner's computations under this Article.

(iii) If Tenant is not in default or anticipatory default under this Lease and as a result of a certiorari proceeding or otherwise, Owner shall actually receive a refund of Taxes for any Tax Year, Owner shall, at its option, either credit the amount of such refund against subsequent payments under this Article or pay to Tenant, Tenant's Percentage Share of the refund; provided, however, that such credit or refund shall not exceed Tenant's Tax Payment paid for such Tax Year, Owner shall adjust the amount of each Tenant's Tax payment previously made, and Tenant shall pay the amount of said adjustment within thirty (30) days after demand setting forth the amount of said adjustment. In no event shall the Fixed Rent ever be reduced by operation of this Article.

C.    Tenant shall pay any occupancy tax or rent tax arising by virtue of this Lease.

D.    In the event that the Commencement Date shall be other than the first day of a Tax Year or Expiration Date or earlier termination of this Lease shall be a day other than the last day of the Tax Year, then in applying the provisions of the Article with respect to any such Tax Year appropriate adjustments shall be made on a basis consistent with the principles underlying the provisions of this Article taking into consideration the portion of such Tax Year which shall have elapsed (i) after the Commencement Date, and (ii) prior to the Expiration Date or sooner termination of this Lease.

E.    Owner's delay or failure to render a bill or statement to Tenant stating Tenant's Tax Payment (hereinafter, "Tax Statement"), or Owner's rendering of an incorrect Tax Statement, with respect to any Tax Year, shall not prejudice Owner's right to thereafter render a Tax Statement, or render a corrected Tax Statement, with respect thereto or with respect to any subsequent Tax Year. Tenant's obligation hereunder shall survive the Expiration Date or earlier termination of this Lease, notwithstanding the fact that a Tax Statement is furnished to Tenant after the Expiration Date or sooner termination of this Lease.

F.    This Article is without prejudice to Owner's rights to improve the Building, including construction of additional floors or otherwise increasing the square footage of the Building, in which circumstances, the provisions of this Article shall remain in full force and effect.

4

G.    It is expressly understood and agreed that Owner's breach of any duty owed to Tenant pursuant to this Lease or applicable law shall not suspend Tenant's "independent" payment obligations pursuant to this Article, nor is Owner's payment of the Building's Taxes a condition precedent to Tenant's Proportionate Share of the increase in Taxes.

43.    **AS IS**

Tenant acknowledges that it has fully inspected and is familiar with the physical condition of the Building and/or the Demised Premises and agrees to accept the Demised Premises in its "AS IS," "WHERE-IS" condition as of the Commencement Date. Owner has not made any express representations or warranties and disclaims any implied representations or warranties relating to the condition of the Building and the Demised Premises, or any part thereof and shall also not be liable for any latent defects therein. Owner may but shall not be obligated to make any changes, alterations, installations, additions or improvements to the Demised Premises whatsoever other than to deliver the Demised Premises in "broom clean" condition. Additionally, Owner is not obligated to obtain any permits, licenses or governmental approvals, or spend any money either to put Tenant in possession or to permit Tenant to open for business, except as otherwise expressly stated elsewhere in this Lease. Except as otherwise provided in this Lease, Tenant shall be obligated to make all changes, alterations, installations, additions and/or improvements to the Demised Premises through the expiration of the Initial Term and Renewal Term(s), if any. Owner makes no warranties or representations regarding whether the Building has a certificate of occupancy and/or that same permits or accommodates Tenant's intended use or any change in use of the Demised Premises or that Tenant's use of the Demised Premises is permitted by applicable local, state and/or federal statutes, rules, codes, ordinances, orders and/or requirements of whatsoever nature. Tenant shall also comply with all current and future federal, state, and local environmental and indoor air quality (IAQ) laws, regulations, and industry standards, including, without limitation, any restrictions on smoking in the workplace.

44.    **ALTERATIONS & REPAIRS**

A.    Supplementing Articles 3 and 4 of the Standard Form hereof, all changes, alterations, repairs, installations, additions or improvements of any kind or nature in or to the Demised Premises whether performed by Tenant or by Owner on Tenant's behalf (hereinafter, "Tenant Changes") shall require Owner's prior written consent. In granting consent to any Tenant Changes, Owner may impose such conditions as to guarantee completion thereof, as Owner may reasonably require. In no event shall Owner be required to consent to any Tenant changes which would affect the structure of the Building, the exterior thereof, any part of the Building outside of the Demised Premises or the mechanical, electrical, heating, ventilation, air conditioning, sanitary, plumbing or other service systems and facilities (including, without limitation, elevators) of the Building, and such Tenant changes shall be performed only by contractors designated or approved by Owner in Owner's sole discretion. Prior to making any Tenant Changes, Tenant shall submit to Owner detailed plans and specifications, including layout, architectural, mechanical and structural drawings for each proposed Tenant change. Any review, modification, approval, supervision and/or coordination of plans and/or specifications for Tenant changes by Owner or Owner's agent shall not result in any liability to Owner or Owner's agent. Tenant shall, promptly upon demand, reimburse Owner or Owner's agent for any expenses and other charges incurred by Owner or its agent in connection with the review, modification and/or approval of such plans and specifications by Owner or its agent and/or any other professional consultants of Owner. Any repairs, whether structural or non-structural in nature, that become necessary as a result of the carelessness, omission, neglect or improper conduct of Tenant or its employees, agents, invitees, licensees, or as required by Article 6 of the Standard Form hereof, shall be at Tenant's sole cost and expense.

5

B.    Nothing in this Lease is intended to constitute a consent by Owner to the subjection of Owner's or Tenant's interest in the Building, including the Demised Premises, or the land upon which the Building or Demised Premises is located to any lien or claim by any person which supplies any work, labor, material, service or equipment to Tenant. Owner hereby notifies all such persons of such intent and each such person agrees that by performing any Tenant Changes for Tenant it accepts that Owner has not granted such consent and that such person shall not have a right to file any lien or claim against such interest of Owner or Tenant in the Building, including the Demised Premises or land upon which the Building or Demised Premises is located. Tenant agrees to provide a copy of this Article to all such persons prior to entering into any contract for or otherwise having Tenant Changes performed. If Tenant's use of any contractor, subcontractor, vendor, supplier or other party causes or threatens to cause disharmony, labor disputes, strikes or picketing of any kind whatsoever, such party shall be dismissed, removed from the job site, and excluded from the Building, and the work of such party shall be continued for Tenant by others satisfactory to Owner.

C.    Supplementing the foregoing, Tenant, at Tenant's sole expense, shall build out and/or otherwise renovate the Demised Premises, in accordance with plans and specifications prepared by Tenant's architect and approved by Owner as a condition precedent to commencement of such work. All work performed by Tenant at the Demised Premises, including the build out/renovations contemplated by this Article will be performed in compliance with all applicable laws, codes, ordinances and similar regulations, including without limitation, local planning, building, and safety codes.

45.    <u>**NO LIENS, ENCUMBRANCES**</u>

A.    No person or entity other than Owner shall have any power, right or authority to do or allow any act or make any contract which creates any lien, mortgage or other encumbrance upon the Building, including the Demised Premises or the land upon which the Building or Demised Premises is located, or of any improvements thereon, or of any interest of Owner therein. Nothing contained in this Lease shall be deemed or construed in any way as constituting the consent or request of Owner, express or implied, by inference or otherwise, to any contractor, subcontractor, architect, laborer or materialmen for the performance of any labor or the furnishing of any material for, in, to or on the Demised Premises. If Tenant shall cause or allow any installation, alteration, addition, decoration, repair, replacement, renewal or improvement to be made to the Building or Demised Premises or cause or allow any labor to be performed or material to be furnished therein or thereon, or purchase any fixtures, chattels or equipment for use in the Demised Premises, neither Owner nor the Demised Premises nor the land or Building shall be liable for the payment of any expense incurred for the value of any work done or material furnished, or fixtures, chattels or equipment purchased for use in the Demised Premises, but all such installations, alterations, additions, decorations, fixtures, chattels and equipment, repairs, replacements, improvements, labor, services and materials (except as hereinafter expressly provided) be made, furnished and purchased for cash and without chattel mortgage financing or any other form of financing at Tenant's own expense, and Tenant shall be solely and wholly responsible to its contractors, subcontractors, laborers, suppliers, architects and materialmen who perform or furnish such labor services and/or material, fixtures, chattels and equipment. Under no circumstances shall Tenant at any time purchase and/or install any furniture, furnishings, fixtures, chattels or equipment for use in the Demised Premises, nor any additions thereto, or any renewals thereof or replacements or substitutions therefor, upon terms and/or conditions wherein and whereby a lien shall or may be filed against the real estate, or against Owner or its title or interest in the real estate. Notwithstanding the foregoing, Tenant shall not be prohibited from encumbering its furniture and such of its equipment located in the Demised Premises as shall constitute solely personal property and which shall not become or be deemed to become part of the realty, and such of its trade fixtures as may be removed without damage or injury to the realty, by security agreements executed under the Uniform Commercial

6

Code and from filing Financing Statements (UCC-1's) appropriately with governmental authorities in connection with such security agreements.

B.     The participation by Owner or of any of Owner's representatives in any meeting, conference, personally or by telephone or other means of communication with any architect, engineer, contractor, subcontractor, materialmen, laborer or other person or firm retained by Tenant to perform work or furnish labor or services of whatsoever nature for the Demised Premises, or Owner's written approval thereof, shall not make Owner or any of Owner's representatives liable for the payment of any portion of the cost of such work, or entitle any architect, engineer, contractor, subcontractor, materialman or laborer to file any mechanic's lien against the Demised Premises, or the Building of which the same form a part, or against Owner.

C.     This Lease shall constitute notice to the world that no mechanic's lien may or can be filed validly against Owner in connection with the Demised Premises, without Owner's express written consent thereto, at any time throughout the term of this Lease. Any mechanic's lien filed against the Building, including the Demised Premises, for, without limitation, work claimed to have been done for or materials claimed to have been furnished to Tenant, (a) shall be discharged of record by Tenant at Tenant's expense within ten (10) days written notice thereof by Owner, by payment, deposit, bond, and order of a court of competent jurisdiction, or otherwise, as may be required by law and (b) either a release or satisfaction of lien shall be filed with the County Clerk of the County in which the Building is located within such ten (10) day period, and (c) a copy of such release or satisfaction, as the case may be, certified by the County Clerk shall be delivered to Owner within three (3) days after such filing. Tenant's failure to do so shall be deemed a material breach of this Lease.

D.     In the event such mechanic's lien is not discharged timely, as aforesaid, Owner may discharge same for the account of and at the expense of Tenant by Payment, bonding or otherwise, without investigation as to the validity thereof or of any offsets or defenses thereto, and Tenant, within ten (10) days after being billed therefor, shall promptly reimburse Owner, as Additional Rent, for all costs, disbursements, fees and expenses, including without limitation, attorney's fees, incurred in connection with so discharging said mechanic's lien, together with interest thereon from the time or times of payment until reimbursement by Tenant. Tenant shall, within five (5) days of demand therefor by Owner, pay to Owner as Additional Rent, Owner's attorney's fees and disbursements.

E.     CONDITIONAL LIMITATION.   In the event such mechanic's lien is not discharged timely, as aforesaid, Owner, in addition to all other rights granted to Owner in this Lease and without limitation, may institute a dispossess summary proceeding based upon such failure to discharge any such lien. In the event Tenant fails to deliver to Owner the certified copy of the release or satisfaction required hereunder within the time period provided for the delivery thereof to Owner, Owner shall have the right to assume that such mechanic's lien has not been discharged and Owner shall have all of the rights and remedies provided for herein based upon Tenant's failure to discharge any such lien.

F.     It is further expressly understood and agreed between the parties hereto that Owner may apply all or a portion of the security deposit made by Tenant hereunder toward discharging any such mechanic's lien and the costs, expenses, fees and disbursements, including, without limitation, attorney's fees, in connection therewith. Upon notification by Owner of the application of all or a portion of the security deposited by Tenant, Tenant shall, within five (5) days after receipt of said notice, restore the security deposit to such amount held by Owner prior to application thereof. Tenant's failure or refusal to restore the security as aforesaid within said five (5) day period shall constitute a material default under this Lease.

46.   **REQUIREMENTS OF LAW**

A.   Supplementing the provisions of Article 6 of the Standard Form, Tenant shall give prompt notice to Owner of any notice it receives of the violation of any law or requirement of any public authority with respect to the Demised Premises or the use or occupation thereof by Tenant. Provided same is Tenant's responsibility, then Tenant alone, at its sole cost and expense, shall take all reasonable, appropriate and/or necessary actions so as to promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards or any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire underwriters, any insurance company and/or any similar body which shall impose any violation, order or duty upon Tenant with respect to the Demised Premises.

B.   Tenant covenants and agrees to comply promptly with all present and future laws, orders and regulations of all federal, state, municipal and local governments, departments, commissions and boards which shall impose any violation, order or duty upon Tenant with respect to the Demised Premises arising out of Tenant's use or manner of use thereof, including but not limited to, any and all laws, orders and regulations pertaining to access and egress to and from the Demised Premises by stairway and elevator and any fire protection, smoke protection and security requirements related thereto.

C.   Tenant acknowledges with respect to the Demised Premises or any portion of the Building affecting the Demised Premises or relating thereto, that it shall be Tenant's responsibility and obligation to comply with all requirements and controls imposed by any and all laws, rules and regulations of any governmental agency or department thereof having jurisdiction over the Building including without limitation the partitioning, layout, exit signs, telephone communications, fire extinguishers, electrical outlets, sprinklers, pressurization, HVAC systems, electrical controls, wiring, public address systems, conduits and additions to the Demised Premises. Owner shall have no obligation or duty with respect thereto. The performance of any of the foregoing required work, installations and/or alterations shall be performed by Tenant in accordance with and subject to all applicable provisions of this Lease and of law, except Owner shall have the right to perform any or all of said work on behalf of Tenant after sixty (60) days written notice unless there is an emergency, at Tenant's sole cost and expense. Owner's costs shall be reasonable and shall be in compliance with standard industry practices. The costs of same shall be deemed Additional Rent which shall be paid within ten (10) days after being billed therefor.

D.   Tenant covenants and agrees to obtain and maintain, at its sole cost and expense, all licenses, permits or certificates from governmental and quasi-governmental authorities having jurisdiction thereof necessary for the conduct of Tenant's business in the Demised Premises, and Tenant will comply with all applicable laws, resolutions, or governmental and/or quasi-governmental authorities having jurisdiction over Tenant's operation, occupancy, or use of the Demised Premises. Tenant will indemnify and save harmless Owner from and against all claims, penalties, losses, damages and expenses including reasonable attorney's fees of Owner imposed by reason of violation of any such applicable law, the rules and regulations or other requirements of any governmental and/or quasi-governmental authority having jurisdiction thereof pertaining to the proposed use by Tenant of the Demised Premises.

E.   (i) If the National Board of Fire Underwriters or any local Board of Fire Underwriters or Insurance Exchange (or other bodies hereafter exercising similar functions) shall require or recommend the installation of fire extinguishers, a "sprinkler system," fire detection and prevention equipment (including but not limited to, smoke detectors and heat sensors), or any changes, modifications, alterations, or the installation of additional sprinkler heads or other equipment for any existing sprinkler system, fire extinguishing system, and/or fire detection

8

system for any reason, whether or not attributable to Tenant's use of the Demised Premises or Alterations performed by Tenant; or

    (ii) If any law, regulation or order or if any bureau, department, or official of the federal, state, and/or municipal governments shall require or recommend the installation of fire extinguishers, a "sprinkler system," fire detection and prevention equipment (including, but not limited to, smoke detectors and heat sensors), or any changes, modifications, alterations, or the installation of additional sprinkler heads or other equipment for an existing sprinkler system, fire extinguishing system, and/or fire detection system for any reason, whether or not attributable to Tenant's use of the Demised Premises or Alterations performed by Tenant; or

    (iii) If any such installations, changes, modifications, alterations, sprinkler heads, or other equipment become necessary to prevent the imposition of a penalty, an additional charge, or an increase in the fire insurance rate as fixed by said Board of Exchange, from time to time, or by any fire insurance company as a result of the use of the Demised Premises whether or not the same is a permitted use under Article 2 of the Standard Form or this Lease, then, Tenant shall, at Tenant's sole cost and expense, promptly make such installations within the Demised Premises and make such changes, modifications, alterations, and/or installation of additional sprinkler heads or other required or recommended equipment.

47.    **HAZARDOUS MATERIALS**

    Tenant shall not use, handle, store, or dispose of, or permit the use, handling, storage or disposal of, any hazardous or toxic substance, material or waste in the Demised Premises which is, or becomes, regulated by any local and/or state governmental and/or quasi-governmental authority and/or by the United States Government (hereinafter, "Hazardous Material"). Owner and its agents shall have the right, but no duty, to inspect the Demised Premises at any time to determine whether Tenant is complying with the terms of this Article. If Tenant is not in compliance with this Article, Owner shall have the right to immediately enter upon the Demised Premises and take whatever actions reasonably necessary, at Tenant's sole cost and expense, to cause Tenant to be in compliance including, but not limited to, the removal from the Demised Premises of any Hazardous Material and the restoration of the Demised Premises to a legally compliant, clean, neat, attractive and sanitary condition. Tenant hereby agrees to indemnify, defend and hold Owner harmless from and against any and all costs, expenses and liabilities of any kind whatsoever (including, without limitation, reasonable attorney's fees, disbursements and court costs) arising out of or relating to Tenant's failure to comply with the terms of this Article.

48.    **INSURANCE**

    A.    Tenant covenants and agrees to provide, at its sole cost and expense, for the benefit of Owner, any mortgagee of the Building and Tenant, to provide on or before the Commencement Date and to keep in force during the term hereof, and at all times (if any) that Tenant has possession of the Demised Premises for any purpose whatsoever, comprehensive general liability insurance policies with broad form endorsements and water damage legal liability coverage protecting (i) Owner, Owner's agent and their respective partners, officers and directors and their successors and assigns, (ii) any mortgagee of the Building and (iii) Tenant against any and all liability whatsoever, occasioned by any accident or occurrence on or about the Demised Premises or any appurtenances thereto. Tenant also covenants and agrees to obtain "ALL RISK" insurance having extended coverage for fire and other casualties for its personal property, fixtures equipment and Tenant's changes for the full replacement cost thereof. Such policies shall be written by recognized and well-rated good and solvent insurance companies authorized and licensed to transact business in the State of New York, and shall name Owner, Alma Realty Corp. (its managing agent) and any mortgagee as additional insureds (as their

9

respective interests shall appear) and shall be in such limits of liability thereunder of not less than two million dollars ($2,000,000.00) aggregate and one million dollars ($1,000,000.00) per occurrence for bodily injury, death and loss of, and damage to property. Such insurance may be carried under a blanket policy covering the Demised Premises and other locations of Tenant, if any. Prior to the time such insurance is first required to be carried by Tenant and thereafter, at least thirty (30) days prior to the expiration date of such policy Tenant agrees to deliver to Owner either a duplicate original of the aforesaid policy or original certificate evidencing such insurance. Said insurance policy shall contain an endorsement that such insurance may not be canceled except upon thirty (30) days' prior written notice to Owner. Tenant's failure to provide and keep in force the aforementioned insurance shall be regarded as a material default hereunder entitling Owner to exercise any or all of the remedies as provided in this Lease including, but not limited to, those provided in the event of Tenant's default in the payment of Rent. Notwithstanding the foregoing, if Tenant fails to provide and keep in force the aforementioned insurance, Owner may, but shall not be obligated to obtain such insurance and the expense thereof shall be payable by Tenant to Owner upon demand by Owner as Additional Rent hereunder. Tenant shall not violate or permit to be violated any condition of any of the foregoing insurance policies and Tenant shall perform and satisfy the requirements of the companies writing such policies.

B.      (i) Tenant agrees that it will include in its insurance policies appropriate clauses pursuant to which the insurance companies waive all right of subrogation against Owner, Owner's managing agent and/or any tenant/subtenant/authorized occupant of space in the Building with respect to losses payable under such policies and/or agree that such policies shall not be invalidated should the insured waive in writing prior to a loss any or all right of recovery against any party for losses covered by such policies. Tenant hereby waives any and all right of recovery which it might otherwise have against Owner, its servants, agents and employees, and against every other tenant/subtenant/authorized occupant in the Building for personal injury, loss of life or damage to Tenant's furniture, furnishings, fixtures and other property removable by Tenant under the provisions hereof to the extent that same is covered by Tenant's insurance, notwithstanding that such loss or damage may result from the negligence or fault of Owner, its servants, agents or employees, or such other tenant and the servants, agents or employees thereof. If the waiver and release stated in this Article shall be prohibited by law, the liability of any party that would have been released shall be secondary to the other's insurance.

(ii) Tenant shall maintain and look first to its fire and extended coverage in an amount adequate to cover the cost of replacement of all Tenant's personal property, loss of business, fixtures, furnishings, improvements and equipment.

(iii) Notwithstanding anything to the contrary in this Lease, Tenant shall indemnify and hold harmless Owner, its managing agent (if any) for the Demised Premises and their respective officers and partners and such other persons who are in privity of estate with Owner and/or said agents from and against any and all claims, actions, damages, liabilities and/or expenses in connection with loss of life, personal injury or damage to property arising from or out of any occurrence in, upon or at the Demised Premises arising from or out of the occupancy or use by Tenant of the Demised Premises or the Building or any part thereof, or occasioned wholly or in part by any act or omission of Tenant, its agents, contractors, employees, permitted sublessees and/or assignees, invitees or concessionaires. In case Owner, Owner's managing agent and/or any or all such other persons who are in privity of estate with Owner shall be made a party to any litigation commenced by or against Tenant, then Tenant agrees to protect and hold such parties harmless and to pay all costs, expenses and reasonable attorney's fees and disbursements incurred or paid by such parties in connection with such litigation.

10

49.    **DESTRUCTION, FIRE AND CASUALTY**

A.    Supplementing Article 9 of the Standard Form, if Owner is required to or elects to repair or restore any damage to or destruction of the Demised Premises, the damage or destruction shall be repaired or restored to the extent of the insurance proceeds available therefor.

B.    Notwithstanding anything to the contrary herein, Tenant agrees that Owner shall not be responsible for any loss of or damage to Tenant's business, furniture, fixtures, equipment, furnishings, or any other property placed or installed in the Demised Premises by or on behalf of Tenant (whether or not attached or affixed to the structure) due to any cause whatsoever.

C.    Tenant's obligation to give "immediate notice" of fire or other casualty shall be in strict compliance with Articles 27 of the Standard Form and 51 of this Rider or shall be deemed null and void.

D.    For purposes of Article 9 of the Standard Form and this Article, a "fire" shall mean a fire in the Building which causes damage in the Demised Premises. A "casualty" shall mean a material casualty and shall not include bad weather, economic downturns of whatsoever nature, governmental decisions or restrictions, transportation problems or supplier problems.

49A.   **INTERRUPTION OF SERVICES**

Owner reserves the right to stop the services of the HVAC, elevator, escalator (if any), plumbing, electrical or other mechanical systems or facilities in the Building when appropriate because of accident or emergency, or for repairs, alterations, replacements or improvement, which, in the judgment of Owner are appropriate, until said repairs, alterations, replacements or improvements shall have been completed, provided Owner (i) uses its best efforts to restore such services as quickly as possible and (ii) performs such work at times and in a manner so as to minimize interference with Tenant's business. The exercise of such rights by Owner shall not constitute an actual or constructive eviction, in whole or in part, or entitle Tenant to any abatement or diminution of rent, or relieve Tenant from any of its obligations under this Lease, or impose any liability upon Owner or its agents by reason of inconvenience or annoyance to Tenant, or injury to or interruption of Tenant's business.

49B.   **CONDITIONS OF OWNER'S LIABILITY**

A.    Tenant shall not be entitled to claim a constructive eviction from the Demised Premises unless Tenant shall have first notified Owner of the condition or conditions giving rise thereto, and unless Owner shall have failed to remedy such conditions within a reasonable time after receipt of such notice, which such notice must comply with the notice provisions of this Lease.

B.    If Owner shall be unable to give possession of the Demised Premises on any date specified for the commencement of the term by reason of the fact that the Demised Premises have not been sufficiently completed to make the Demised Premises ready for occupancy, or for any other reason which is not the fault of the Owner, Owner shall not be subject to any liability for the failure to give possession on said date, nor shall such failure in any way affect the validity of this Lease or the obligations of Tenant hereunder.

49C.   LIMITATION OF RIGHTS AND REMEDIES

    A.    Notwithstanding anything to the contrary in this Lease, the parties hereby waive the provisions of Real Property Law §227 and agree that the terms of this Lease shall control in lieu thereof.

    B.    Notwithstanding anything to the contrary elsewhere in this Lease, any rent abatement awarded to Tenant by a court of competent jurisdiction shall not exceed fifteen percent (15%) of the Fixed Rent and/or Additional Rent (as the case may be) in effect during the time period for which such abatement is sought.

50.   UTILITIES; SERVICES

    A.    Notwithstanding anything to the contrary contained in this Article or elsewhere in this Lease, Tenant shall bear the cost and expense of installation, use, consumption, maintenance and repair of all utilities and HVAC units which service or will service the Demised Premises as further described in this Article. Owner shall not be required to furnish, provide or pay for any facilities, utilities or services to or for the Demised Premises of any kind or nature whatsoever, or do any work or make any installations, repairs, alterations or improvements in or to the Demised Premises in connection therewith. Tenant acknowledges that it has inspected, or has been given the opportunity to inspect, the Building, including the Demised Premises, and is fully aware of the availability or unavailability of utilities for use by Tenant in the operation of its business. Owner shall not in any way be liable or responsible to Tenant for any loss, damage or expense that Tenant may sustain or incur if either the quantity, quality or character of any utility or HVAC system(s) servicing the Demised Premises has changed, is no longer available and/or is otherwise unsuitable for Tenant's requirements.

    B.    The electric current and gas service shall be supplied to Tenant by the public utility corporation(s) serving the area in which the Building is located. Tenant shall, at its sole cost and expense, purchase same directly from such public utility corporation(s) and install, maintain, repair or replace any electric and gas meter or sub-meter which measures Tenant's electrical and/or gas consumption. Owner has the option of installing (to the extent not already installed), at Tenant's cost and expense, a sub-meter measuring Tenant's electric current and/or gas consumption at the Demised Premises and no other portion of the Building. In no event shall Tenant in any way interfere with or tie in to any electrical feeders, risers or other electrical installations within the Building, including the Demised Premises.

    C.    Tenant shall be responsible for all water charges related to the Demised Premises. Owner has the option of installing (to the extent not already installed), at Tenant's cost and expense, a sub-meter measuring Tenant's water consumption at the Demised Premises and no other portion of the Building. If a sub-meter is not or cannot be installed or becomes non-functional (permanently or temporarily) for whatsoever reason, Tenant shall be responsible for payment of Tenant's Percentage Share (as defined in Article 42) of the water charges related to the Building. Tenant will pay same to Owner upon receipt of such bill. Tenant shall install (to the extent not already installed) and maintain, at its own cost and expense, a separate hot water heater immediately upon execution of this Lease.

    D.    Except as otherwise agreed to by the parties in writing, Tenant shall be solely responsible, at Tenant's sole cost and expense, for the installation (to the extent not already installed), furnishing, maintenance and repair of heating, ventilation, cooling and dehumidification of and for the Demised Premises, and only by persons or entities approved by Owner shall be permitted to enter the Building, including the Demised Premises for purposes of installing, furnishing, maintaining and/or repairing same. If electric current for the operating of any such heating, ventilation, cooling and/or dehumidification system is not measured by the meter or sub-meter which measures Tenant's consumption of electricity, Tenant (or Owner, in Owner's sole discretion), at Tenant's sole cost and expense, shall install a sub-meter or re-route

the electric current for the system so that Tenant's sub-meter will measure such consumption. Tenant shall not remove any system or portion or component of any system described herein at the expiration of the Lease Term or any renewal terms.

      E.     To the extent that water, gas, electrical, heating, ventilation, cooling and/or dehumidification services for the Demised Premises are interrupted, discontinued or non-functional or otherwise unavailable for any reason or cause (including as a result of fire or other casualty), temporarily or otherwise, Tenant shall be obligated to install, restore and/or remediate and/or repair and/or resolve same for the Demised Premises at Tenant's sole cost and expense and without any liability of Owner whatsoever.

      F.     Interruption, absence, curtailment, unsuitability or insufficiency of any utility or service described in this Article shall not constitute an actual or constructive eviction or partial eviction, nor entitle Tenant to any abatement or diminution of rent or any reimbursement or compensation; nor shall it relieve Tenant from any of its obligations under this Lease.

51.    **NOTICES**

      A.     All notices required to be given pursuant to this Lease (except Additional Rent bills, which may be sent by regular or first-class mail or otherwise in accordance with Owner's ordinary business practices) shall be in writing and shall be given by personal delivery, overnight delivery service or by certified mail, return receipt requested. Notices shall be deemed to have been given when delivered in person or by overnight delivery service, or on the second business day after mailing, if given by certified mail, return receipt requested. Notices shall be given to the parties at the following addresses:

          To Owner:    At Owner's address given in the Standard Form or such other address as may be designated by Owner or Owner's attorneys by written notice pursuant to this Article.

          To Tenant:    At the Demised Premises or Tenant's address given in the Standard Form or such other address as may be designated by Tenant or Tenant's attorney by written notice pursuant to this Article.

      B.     Notwithstanding anything contained in this Lease to the contrary, notices sent by Owner's attorney on behalf of Owner shall be valid service pursuant to this Lease, provided, however, that the manner in which each notice is sent is in accordance with the terms of the Lease. Tenant shall not have the right to contest the fact that Owner's attorney sent any such notice.

52.    **RENEWAL OPTION – INTENTIONALLY OMITTED**

53.    **ESTOPPEL CERTIFICATE**

      Supplementing Article 38 of the Standard Form, Tenant agrees, at any time and from time to time, as requested by Owner, upon not less than ten (10) days' prior notice, to execute and deliver to Owner and/or any other person, firm or corporation specified by Owner, a statement certifying: (i) the amount of Fixed Rent and Additional Rent then being paid; (ii) whether Tenant has assigned its interest in this Lease or sublet any portion of the Demised Premises, and providing the name of any such assignee or subtenant and dates of any such assignment or sublease; (iii) such other information as Owner may request (including, without limitation, financial information of Tenant and/or any permitted subtenant or assignee, which Owner may require to be in certified form), it being intended that any such statement delivered

pursuant hereto may be relied upon by Owner, any mortgagee or prospective mortgagee of Owner or any purchaser or prospective purchaser of the Building. If Tenant fails to execute and deliver an Estoppel Certificate within the prescribed time period, Owner reserves the right to execute and deliver an Estoppel Certificate on Tenant's behalf without prejudice to Owner.

54.    **HOLDING OVER**

      A.    It is expressly understood by Tenant that Tenant's right to possession of the Demised Premises under this Lease shall cease on the Expiration Date or earlier termination of this Lease, and should Tenant continue thereafter to remain in possession of the Demised Premises, Owner, should it so elect, shall be entitled to the benefits of all provisions of law with respect to summary recovery of possession from a holdover tenant.

      B.    Should Tenant continue to occupy the Demised Premises after Expiration Date or earlier termination of this Lease without the prior written consent of Owner, such holding over shall not be deemed to extend the term or renew this Lease, but such holding over thereafter shall continue upon the covenants and conditions as stated in this Lease, except that the Tenant shall pay for use and occupancy of such holding over for each calendar month or part thereof (even if such part shall be a small fraction of a calendar month) an amount equal to the sum of : (a) 1/12 of the annual Fixed Rent in effect as of the Lease Year expiring on the Expiration Date, multiplied by two (2); plus (b) any and all Additional Rent in effect as of the Lease Year expiring on the Expiration Date, which total sum Tenant agrees to pay to Owner promptly upon demand, in full, without any set-off or deduction. Neither the billing nor collection of use and occupancy in the above amount shall be deemed a waiver of any right of Owner to collect damages for the Tenant's failure to vacate the Demised Premises after the Expiration Date or sooner termination of this Lease. The aforesaid provisions of this Article shall survive the expiration of this Lease.

      C.    Notwithstanding anything to the contrary contained in this Lease, if Tenant holds over and/or otherwise occupies the Demised Premises at any time without a written lease in full force and effect, due to expiration thereof or otherwise, the parties agree that the terms of this Lease shall control in every respect except for the duration of the term.

      D.    Nothing contained in this Article shall be deemed to grant Tenant the right to possession of the Demised Premises after the Expiration Date or earlier termination of this Lease.

      E.    Tenant waives the right to seek "Yellowstone" injunctive relief for either monetary or non-monetary defaults. Tenant's only remedy in connection therewith shall be at law, if any.

      F.    Notwithstanding anything to the contrary contained in this Lease, any injunctive relief awarded to Tenant by a Court of competent jurisdiction shall only limit Owner's right to terminate this Lease and in no way shall limit any other rights or remedies (such as late charges, default interest and/or reimbursement of Owner's expenses) which Owner may have pursuant to this Lease or applicable law. Tenant further agrees as follows:

          (i)    Tenant may obtain an open-ended cure period by depositing with Owner as security an amount equal to Owner's reasonable estimate of the cost to cure the alleged default. Such security constitutes the only way for Tenant to evidence its ability and desire to cure the default. Owner will only be prevented from terminating the Lease if the Tenant actually makes this deposit to Owner.

          (ii)    Should Owner prevail in litigation involving the provisions of this Article, this Lease will be deemed to have terminated on the date that Owner delivered notice of default, and the holdover rent rate will apply from that date forward. Tenant shall deposit this amount in escrow during any pendency of "Yellowstone" injunction.

G.      Tenant waives the right to consolidate a summary proceeding commenced by Owner against Tenant with any other action or proceeding, regardless of which action and/or proceeding was commenced first.

55.     **BROKER**

No broker was involved in the execution of this Lease.

56.     **SECURITY DEPOSIT**

A.      The term "Lease Security" shall mean and refer to all sums held at any time by Owner for the faithful performance and observance by Tenant of Tenant's obligations under this Lease.  At the time that this Lease is being executed, the required Lease Security is $8,000.00. Owner shall always hold a minimum of two (2) times the then Fixed Rent as and for Lease Security.  Tenant's failure to comply with its obligations in the immediately preceding sentence shall be deemed a non-curable violation of a substantial obligation of Tenant's tenancy, and Owner may cancel this Lease upon five (5) days' written notice.  As and when the Fixed Rent increases, Tenant shall deposit with Owner within ten (10) days, sufficient funds to increase the Lease Security such that Tenant is in compliance with this Article.

B.      Owner shall not be required to segregate or deposit Tenant's Lease Security in an interest bearing account.  If the Lease Security is placed in an interest bearing account, Tenant shall not be entitled to receive any interest thereon, nor shall any accrued interest be applied to any necessary increases in the Lease Security as required by this Lease from time to time.

C.      Tenant agrees that in the event Tenant defaults in respect of any of the terms, provisions and/or conditions of this Lease, including, but not limited to, the payment of Fixed Rent and Additional Rent, Owner may use, apply or retain the whole or any part of the Lease Security deposited and interest earned thereon, if any, to the extent required for the payment of any Fixed Rent and Additional Rent, with interest thereon, computed at the default rate from the date of default, or for any sum which Owner may expend or may be required to expend, or may lose, as the case may be, by reason of Tenant's default in respect of any of the terms, covenants and conditions of this Lease, including, but not limited to, any damages or deficiency in the re-letting of the Demised Premises, whether such damage or deficiency accrued before, or of after summary proceedings or other re-entry by Owner, with interest thereon computed at the default rate from the date of expenditure of loss, as the case may be.

D.      In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this Lease, the Lease Security, or so much thereof as shall then remain on deposit with Owner, shall be returned to Tenant within thirty (30) days after the date fixed as the end of this Lease and after delivery of entire possession of the Demised Premises to owner in accordance with the provisions of this Lease.

E.      In the event of a sale of the Demised Premises, Owner shall have the right to transfer the Lease Security to the vendee or lessee and Owner, upon making such transfer and confirming in writing to Tenant that Owner has done so and upon providing in writing to Tenant the name and address of such vendor or lessee shall be deemed released by Tenant from all liability for the return of the Lease Security and Tenant agrees to look solely to the new owner for the return of the Lease Security. It is further agreed that the provisions of this Paragraph "E" shall apply to every transfer or assignment made of the Lease Security to a new owner.

F.      Tenant further agrees that it will neither assign nor encumber, nor attempt to assign or encumber, the monies deposited hereunder as Lease Security and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

15

G.     Notwithstanding anything to the contrary contained herein, if all or any part of Tenant's initial Lease Security is returned for insufficient funds and/or Owner is otherwise unable to collect Tenant's initial Lease Security deposit, in whole or in part, same shall be an intentional, material and non-curable default and Owner, at its option, and without further notice to Tenant or opportunity for Tenant to cure such default, may elect to terminate this Lease upon three (3) days' notice to Tenant, and upon the expiration of such three (3) day period Tenant shall quit and surrender the Demised Premises to Owner in accordance with the provisions of this Lease, and Tenant shall remain liable as elsewhere provided in this Lease.

57.    **OWNER'S CONSENT; EXCULPATION**

A.     If Tenant shall request Owner's consent or approval under this Lease and Owner shall fail or refuse to give such consent or approval, Tenant shall not be entitled to any damages for any withholding or delay by Owner of its consent or approval.  Tenant's sole remedy shall be an action for specific performance or other injunction.  Specific performance or injunction shall only be available in those instances where Owner has expressly agreed in writing not to unreasonably withhold its consent or approval, or where Owner may not unreasonably withhold its consent or approval as a matter of law.

B.     The term "Owner" shall mean only the owner at the time in question of the present Owner's interest in the Building and in the event of a sale or transfer of the Building (by operation of law or otherwise), or in the event of the making of a lease of all or substantially all of the Building, or in the event of a sale or transfer (by operation of law or otherwise) of the leasehold estate under any such lease, the grantor, transferor or lessor, as the case may be, shall be and hereby is (to the extent of the interest or portion of the Building or leasehold, estate sold transferred or leased) automatically and entirely released and discharged, from and after the date of such sale, transfer or leasing, of all liability in respect of the performance of any of the terms of this Lease on the part of Owner thereafter to be performed; provided, that the purchaser, transferee or lessee (hereinafter collectively referred to as ("Transferee") shall be deemed to have assumed such liability and agreed to perform such terms, subject to the limitations of this Article (and without further agreement between the then parties hereto, or among such parties and the Transferee) and only during and in respect of the Transferee's period of ownership of Owner's interest under this Lease. The provisions of this Article are not intended to diminish or negate any rights of any ground or underlying lessor or any mortgagee stated in Article 7 of the Standard Form.

C.     Tenant acknowledges and agrees that if Owner shall be an individual, joint venture, tenancy-in-common, firm or partnership (general or limited), limited liability company or similar entity, there shall be no personal liability on such individual or on the individual members, members of members, partners, persons and/or tenants of such joint venture, tenancy-in-common, limited liability company, firm or partnership, general or limited, as the case may be, in respect of any of the covenants or conditions of this Lease. Notwithstanding anything to the contrary contained in this Lease, it is agreed and understood that Tenant shall look only and solely to the then-Owner's estate and interest in and to the Demised Premises for the satisfaction of any right of Tenant arising out of this Lease, or for the collection or enforcement of any judgment (or other judicial decree or arbitration award, in the event that arbitration is specifically provided for herein) requiring the payment of money by Owner to Tenant by reason of any default or breach by Owner in the performance of its obligations under this Lease, it being intended hereby that no other assets of Owner or its principals shall be subject to levy, execution, attachment or other such legal process for the enforcement or satisfaction of the remedies pursued by Tenant in the event of such default or breach.

D.     No recourse shall be had on any of Owner's obligations under this Lease or for any claim based thereon or otherwise in respect thereof against any individual, incorporator, subscriber to the capital stock, shareholder, employee, agent, officer or director, past, present or

16

future, of any corporation, or any partner or joint venture of any partnership or joint venture which shall be or was (i) Owner hereunder or (ii) included in the term "Owner", or (iii) any of the foregoing, whether directly or through Owner or through any receiver, assignee, agent, trustee in bankruptcy or through any other person, firm, or corporation, whether by virtue of any constitution, statute or rule of law or by enforcement of any assessment or penalty or otherwise, any and all such liability being expressly waived and released by Tenant.

58.   **LEASE NOT BINDING UNLESS EXECUTED AND DELIVERED**

It is specifically understood and agreed that this Lease is offered to Tenant subject to Owner's acceptance and approval and that Tenant has hereunto affixed its signature with the understanding that this Lease shall not in any way bind Owner or its agent unless and until such time as the same has been approved and executed by Owner and delivered to Tenant.

59.   **BANKRUPTCY**

A.    Tenant covenants and agrees that without limiting any of the provisions of Articles 16, 17 or 18 of the Standard Form, if, pursuant to the United States Bankruptcy Code of 1978, as the same may be amended from time to time, Tenant (or Tenant's trustee or other representative) elects to assume or is permitted to assign this Lease, then adequate assurance of future performance by the Tenant or assignee as required under such Code shall mean at least the deposit of additional cash Lease security with Owner in an amount equal to the sum of six (6) month's fixed minimum rent then reserved hereunder (in addition to the Lease security then being held by Owner), plus an amount equal to all Additional Rent payable under Articles 41, 42 and 43 of this Rider (Tenant's Percentage Share of the latter) and other provisions of this Lease for the calendar year preceding the year in which such assignment or assumption is intended to become effective, which deposit shall be held and applied by Owner pursuant to the provisions of Article 56 hereof. If Tenant receives or is to receive any valuable consideration, after deducting therefrom (a) the brokerage commissions, if any, and other expenses reasonably incurred by Tenant for any such assignment and (b) any portion of such consideration reasonably designated by the assignee as paid for the purchase of Tenant's property in the Demised Premises, such consideration shall be paid over to Owner directly by such assignee. The term "adequate assurance" as used in this Article 59 also shall mean that any such assignee of this Lease shall have a net worth, exclusive of good will, equal to at least fifteen (15) times the aggregate of one year's fixed minimum rent then reserved hereunder plus all Additional Rent for the preceding calendar year as aforesaid.

B.    In the event that Tenant declares bankruptcy under any Chapter of the Bankruptcy Code at any time, Tenant shall not, and hereby waives any rights it has or might believe Tenant has, to assert that this lease is anything other than a conveyance of a leasehold interest in real property. Further, Tenant hereby agrees and stipulates that this Lease is not a contract to make a loan or to extend its debt financing or other financial accommodations.

60.   **USE; COVENANTS OF TENANT**

A.    Subject to, and in accordance with, all requirements of public authorities and all requirements of insurance bodies, Tenant covenants and agrees that it shall use the Demised Premises solely for a **WIRELESS PHONE STORE** and for no other purpose lawful or unlawful.

B.    If any governmental license or permit shall be required for the proper and lawful conduct of Tenant's business in the Demised Premises or any part thereof, Tenant, at its expense, shall duly procure, and thereafter maintain, such license or permit and submit the same for inspection by Owner. Owner agrees that it shall cooperate with Tenant in all reasonable aspects in connection with the obtaining of such licenses and permits, provided that Owner shall not be

17

obligated to expend any monies or incur any expense in connection therewith. Tenant shall, at all times, comply with the terms and conditions of each such license or permit.

C.       Tenant agrees that Owner shall have the right to prohibit the continued use by Tenant of any method of business operation, advertising or display (interior or exterior) if, in Owner's opinion, the continued use thereof would impair the reputation of the Demised Premises or of the Building, or is otherwise out of harmony with the general character thereof, and upon notice from Owner, Tenant shall forthwith refrain from or discontinue such activities.

D.       Tenant covenants and agrees that it shall:

(i) Operate the Demised Premises in a reputable manner consistent with its location in a residential building.

(ii) Take all reasonable precautions, at its sole cost and expense, to prevent any unusual or obnoxious odors from emanating from the Demised Premises.

(iii) Not to use the utility waste lines and plumbing for any purpose other than that for which they were constructed and not to permit any food, waste or other foreign substance to be thrown or drawn into the pipes. Tenant shall take all reasonable steps to prevent excess fat, grease, or any other greasy substance from entering the utility waste lines and plumbing of the Demised Premises, and Tenant shall, at its sole cost and expense, clear any blockage in any sewer line servicing the Demised Premises.

(iv) Cause the Demised Premises to be free of rats, cockroaches and other vermin, including, without limitation, engaging the services of an exterminator to service the Demised Premises from time to time as shall be necessary and desirable (but in no event less frequently than one ((1)) time per month).

(v) Cause all of Tenant's waste, trash and rubbish to be deposited into, and stored in, appropriate containers so that the Demised Premises and the portions of the Building on the street appurtenant to the same shall be maintained in a clean and sightly condition at all times and cause all such waste, trash and rubbish to be regularly carted from the Demised Premises so as to prevent the accumulation of the same thereat in accordance with the regulations of the City of New York. Tenant shall not encumber or obstruct, or permit to be encumbered or obstructed, the portion of the Building or of the sidewalk or street adjacent to or abutting the Demised Premises.

(vi) Cause all of its staff and employees to enter and exit the Demised Premises at all times through an entrance and exit designated by Owner in writing, and keep such staff and employees from loitering in the lobbies and other areas of the Building. Subject to compliance with any required union proceedings (which Tenant shall institute and prosecute in good faith), Tenant shall, upon Owner's request, dismiss any of Tenant's staff or employees who shall violate any of the provisions of this Lease or the rules and regulations relating to the Building.

(vii) To the extent that music is played in the Demised Premises, take all steps to prevent such music from being heard outside of the Demised Premises. Notwithstanding anything to the contrary herein, in no event shall Tenant cause, allow or permit the live performance of music in any part of the Demised Premises without Owner's consent.

(viii) Maintain the Demised Premises, or cause the same to be maintained, in a first-class, clean, uncluttered, neat, sanitary and safe manner (including the periodic painting and repainting of the same as reasonably required) and provide, or cause to be provided, all maintenance supplies, materials and/or equipment necessary to maintain the Demised Premises in such manner.

18

All of the aforesaid shall be performed at the sole cost and expense of Tenant. In addition to any other remedy available to Owner for any breach by Tenant of its obligations under this Article, Owner shall have the right, upon ten (10) days' prior written notice to Tenant to make any repairs, remediation or alterations made necessary due to Tenant's default hereunder, and to charge the cost and expense thereof to Tenant as Additional Rent.

  E. Tenant shall use the Demised Premises, and will perform all work required or permitted hereunder, in such a manner so as not to create any noise, vibration, or odor that disturbs any of the other tenants occupying adjacent and/or neighboring premises or any other occupant or guest of the Building. Additionally, in connection with Tenant's use of the Demised Premises and/or any work performed by Tenant hereunder, Tenant shall not take any action, or precipitate or participate in any dispute (union or otherwise), that would or might interfere with the business of Owner, the operation of the Building, the business of any other tenant or occupant in the Building, or the rights and privileges of any person(s) lawfully in the Building (including any tenant, invitee, or licensee thereof). Without intention to limit the generality of the foregoing in any respect, Tenant agrees that it shall take no action and shall suffer no omission that would or might create, or lead to the threat of, any work stoppage, picketing, labor disruption or dispute. Any default by Tenant under this Article that is not cured within three (3) days after receipt by Tenant of written notice thereof shall be deemed a material default by Tenant under this Lease, entitling Owner to exercise any or all of the remedies provided herein or otherwise available to Owner (including the right to seek and obtain injunctive and provisional relief).

  F. Tenant acknowledges that the provisions of this Article are material inducements to Owner for the execution of the Lease.

  G. Anything in Article 2 of the Standard Form or elsewhere in this Lease to the contrary notwithstanding, and without in anyway expanding on Tenant's use of the Demised Premises permitted hereunder, Tenant shall not use or permit all or any part of the Demised Premises to be used for the: (i) conduct of a manufacturing, printing or electronic data processing business, except that Tenant may operate business office reproducing equipment, electronic data processing equipment and other business machines for Tenant's requirements (but shall not permit the use of any such equipment by or for the benefit of any party other than Tenant), (ii) conduct of a school; (iii) conduct of the business of an employment agency or executive search firm; (iv) conduct of any public auction, gathering, meeting or exhibition; (v) conduct of any obscene or pornographic purpose or any sort of commercial sex establishment; (vi) conduct of any abortion or drug treatment clinic; and/or (vii) conduct of banking or related banking business operations (except a credit union and/or benefit plans for Tenant's employees) or a stock brokerage office or business.

  H. Tenant shall not use or permit all or any part of the Demised Premises to be used so as to impair the Building's character or dignity or impose any additional burden upon Owner in its operation. Further, Owner shall have the right to revoke or withhold its consent to Tenant's specific use of the Demised Premises within the first (1st) sixty (60) days following execution of this Lease. Tenant shall not be entitled to any damages for any withholding or delay by Owner of such consent or approval. Upon Owner's revocation of consent, this Lease shall be deemed terminated on ten (10) days' written notice to Tenant served by Owner in accordance with the notice provision of this Lease.

61. **SIGNS AND AWNINGS**

  A. Prior to Tenant undertaking any sign or awning installation, Tenant shall submit plans or sketches of the proposed sign(s) and/or awning(s) to the Owner for its prior written approval which shall not be unreasonably withheld. Such sign(s) and/or awning(s) must be uniform in color and must comply with all of the rules and regulations of all governmental

bodies having jurisdiction. In the event that the signs or awnings comply with all of the rules and regulations of a governmental bodies having jurisdiction over Owner shall approve such signs or awnings. Subsequent to obtaining Owner's approval, Tenant, at its own cost and expense, may install a sign, signs or awnings upon the exterior of the Demised Premises. Tenant further covenants and agrees to indemnify and hold Owner and Alma Realty Corp. (Owner's managing agent) harmless from any and all damage and/or liability in connection with such sign(s) and/or awning(s).

B.     If Owner or Owner's representatives shall deem it necessary to remove any lighting, awnings, canopies, sign or signs, in order to paint or to make any other repairs, alterations or improvements in or upon said premises of the Building wherein same is situated, or any part thereof, the Owner shall have the right to do so, provided the same be removed and replaced at the Tenant's expense, whenever the said repairs, alterations or improvements shall have been completed.

62.    **GLASS AND SIDEWALKS**

A.     Tenant, at its own cost and expense, promptly shall replace all damaged or broken plate glass within the Demised Premises and any other glass in the Building if damaged by Tenant or its invitees.

B.     Tenant shall keep the sidewalks adjacent to the Demised Premises free from dirt and rubbish at all times. Tenant shall also remove all snow and ice from the sidewalks within a reasonable time after accumulation.

C.     Tenant shall be obligated to make all necessary repairs to the sidewalks adjacent to the Demised Premises unless such need for repair was solely caused by or due to the reckless or intentional conduct of Owner.

63.    **CONDITIONAL LIMITATION**

A.     Supplementing the provisions of Article 17 of the Standard Form, if Tenant shall default in the payment of any Fixed Rent and/or Additional Rent three (3) times during any twelve (12) month period and such default(s) continues for more than three (3) days after written notice thereof from Owner to Tenant by overnight mail addressed to the Demised Premises, such third default shall be deemed to be an intentional, material and non-curable violation of a substantial obligation of Tenant's tenancy, and Owner, at its option and without further notice to Tenant or opportunity for Tenant to cure such default, may elect to terminate this Lease upon three (3) days' notice to Tenant by overnight mail addressed to the Demised Premises, and the term hereunder shall end and expire as fully and completely as if the expiration of such three (3) day period were the Expiration Date, and upon the expiration of such three (3) day period Tenant shall quit and surrender the Demised Premises to Owner in accordance with the provisions of this Lease, and Tenant shall remain liable as elsewhere provided in this Lease.

B.     Notwithstanding subdivision "A" of this Article, if Tenant is more than two (2) months behind in its Fixed Rent and/or Additional Rent obligations, Owner shall have the right to advertise and re-enter the Demised Premises at reasonable hours for the purpose of showing same to prospective tenants and may place in and/or upon the Demised Premises the usual "To Let" or "For Rent" notices which Tenant will maintain with no molestation. In such circumstances, Owner shall have the right to negotiate a lease with such prospective tenant(s), without prejudice to Owner, and without same constituting a breach of or interference (tortious or otherwise) with the Lease and/or applicable law. In addition to and exclusive of all other remedies available to Owner under this Lease and applicable law, Tenant hereby agrees to

20

execute a surrender agreement (without prejudice to Owner's right to collect any such unpaid Fixed Rent and/or Additional Rent) in the event Owner re-lets the Demised Premises in accordance with this subdivision "B." If Tenant fails to execute any such surrender agreement required by this Article within five (5) days of Owner's demand for same, Owner may terminate this Lease on ten (10) days' written notice.

C.     A default under any other lease between Owner (or any other ownership entity that is managed by Alma Realty Corp. at the time of the default) and Tenant (or any other tenant related to or affiliated with Tenant), or under any renewal or extension of any such leases, whether by a renewal or extension agreement or new lease (any or all of the foregoing are hereinafter referred to as the "Other Leases"), shall, at Owner's option, be deemed to be a default under this Lease and a default under this Lease shall be deemed to be a default under each and every of the Other Leases. The giving of notice of default under any Other Lease shall be deemed to be sufficient notice of default under this Lease and Tenant agrees that no duplicate or second notices of default need be given.

64.     **ASSIGNMENT AND SUBLETTING**

A.     Tenant, for itself, its successors and assigns, expressly covenants that it shall not assign, mortgage or encumber this Agreement, nor underlet the Demised Premises or any part thereof nor license or permit the Demised Premises or any part thereof to be used by others, without the prior written consent of the Owner, such written consent not to be unreasonably withheld (notwithstanding anything to the contrary stated herein), and upon due compliance with the provisions of this Article.

B.     Prior to requesting the approval of Owner to an assignment or subletting as hereinafter provided, Tenant shall offer to terminate this Lease as of the last day of the calendar month which is at least sixty (60) days from the date of Tenant's notice, during the term hereof, which day shall be prior to the effective date of such proposed assignment or subletting, and to vacate and surrender the Demised Premises to Owner. Simultaneously with said offer to terminate this Lease, Tenant shall advise the Owner of all the terms, covenants and conditions of the Tenant's proposed sublease or assignment. A sublease of less than 40% of the Demised Premises shall not give rise to Owner's recapture rights herein. The provisions of this subsection shall not be applicable provided that (i) in the case of a sublease(s) in excess of forty percent (40%) of the demised area, fifty percent (50%) of all Fixed Rent and Additional Rent received by Tenant for sublease(s) in excess of the Fixed Rent and Additional Rent received herein, shall be paid to Owner within fifteen (15) days of receipt, as Additional Rent; and (ii) in the case of an assignment, fifty percent (50%) of any consideration paid to Tenant for said assignment, except that which is paid for Tenant's furniture, fixtures, equipment, leasehold improvements and goodwill shall be paid to Owner within fifteen (15) days of receipt. In either of the foregoing cases, Tenant shall first deduct its expenses, including brokerage fees, before submitting to Owner.

C.     With respect to any proposed subtenant or assignee, Tenant shall submit to Owner the most recent fiscal year's financial statements of such person or entity as well as a description of the business of the person or entity. Notwithstanding anything herein to the contrary, Tenant may not assign, sublet, license or otherwise encumber this Lease, in the event Tenant is in default in the payment of rent or is otherwise in default in the performance or observance of any other terms, conditions, provisions or covenants of this Lease on Tenant's part to be observed and/or performed. In addition, in connection with any proposed assignment or sublet, the proposed assignee or undertenant shall: (a) have a comparable financial position and net worth as Tenant, and (b) be credit-worthy and (c) be of good reputation.

D.    With respect to any proposed subtenant or assignee, the proposed use of the Demised Premises subsequent to any sublet or assignment, or any of them, contemplated by this Article, shall not be detrimental to the Building, including the Demised Premises.

E.    Notwithstanding anything to the contrary contained herein, Owner, at its sole discretion may withhold its consent without providing a basis therefor if the proposed sublessee or assignee is: (1) a government agency, (2) a current tenant in the building, (3) a prospective tenant who is currently in negotiation with Owner for a lease, or (4) any proposed assignee or sublessee who was in negotiation with Owner for space in the Building within the twelve (12) months prior to such proposed sublet or assignment.

F.    No such assignment or sublet shall be effective until duplicate originals of such Assignment and Assumption Agreement or Sublease Agreement wherein Assignee or Sublessee agrees to perform all the obligations of the Tenant under this Lease in form satisfactory to Owner are delivered to Owner.

G.    No subletting of the Demised Premises shall release or discharge the Tenant hereunder from any of its obligations to be performed under this Lease.  All sublease agreements shall contain language which expressly makes the sublease agreement subordinate and subject to this Lease.

H.    Any transfer of Tenant's interest in this Lease or in the Demised Premises by merger, consolidation, liquidation or by any subsequent change in the ownership of fifty percent (50%) or more of the corporation's stock ownership or membership interest (if a limited liability company as to the latter), will be deemed an assignment that is prohibited without the Owner's approval and shall further be deemed a material default of this Lease in Owner's sole discretion.

I.    Notwithstanding anything contained in this Lease to the contrary, Owner shall not be obligated to entertain or consider any request by Tenant, or consent to any proposed assignment of this Lease or sublease unless each request by Tenant is accompanied by a non-refundable fee by certified check in the sum of One Thousand Five Hundred Dollars ($1,500.00) to cover Owner's attorney's fees and related costs to process the proposed assignment.  Neither Tenant's payment nor Owner's acceptance of the foregoing fee shall be construed to impose any obligation whatsoever upon Owner to consent to Tenant's request.

J.    As a condition precedent to Owner's consent to any sublet, Tenant shall tender to Owner a monthly sublet fee equal to twenty percent (20%) of Tenant's then Fixed Monthly Rent (the "Sublet Fee") on an ongoing basis for the duration of such sublet(s).  Such Sublet Fee shall be deemed Additional Rent and Tenant will immediately be obligated to pay to Owner such Sublet Fee without further notice or demand simultaneous with Tenant's then due Fixed Monthly Rent.  Tenant's obligation pursuant to this Article shall be a continuing obligation, and Tenant's failure to comply with the provisions of this Article shall automatically vest in Owner the right to revoke its consent to the sublet and/or determine the sublet to be a violation of a substantial obligation of Tenant's tenancy.  Further, Tenant's obligations pursuant to this Article are independent of, and not conditioned upon, Tenant's collection of such sublet fees.

65.    **ARBITRATION**

A.    To the extent that there is a good faith non-monetary dispute which cannot be resolved between the parties involving Owner's reasonableness in withholding its consent, Tenant's sole remedy, at Owner's election, shall be to cause the question of the same to be immediately submitted for resolution to arbitration under the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration Association (or any organization successor thereto) in the City of New York and County in which the Demised Premises is located, wherein each party must designate its arbitrator within five (5) business days, and the arbitrators shall be instructed to reach a determination as to the reasonableness of Owner's action

22

within ten (10) business days thereafter. The arbitrator(s) shall: (i) be disinterested person(s) having at least ten (10) years of experience in the County of New York in a calling connected with the dispute, and (ii) have the right to retain and consult experts and competent authorities skilled in the matters under arbitration. In rendering any decision or award hereunder, the arbitrator(s) shall not add to, subtract from or otherwise modify the provisions of this Lease.

B.    In the event of a determination favorable to Tenant, the requested consent shall be deemed to have been granted by Owner. In the event Owner is the prevailing party in any such dispute, the fees and expenses of the arbitrator(s) and all other expenses (not including the attorney's fees, witness fees and similar expenses of the parties) of the arbitration shall be borne by Tenant.

66.    **EXCULPATORY CLAUSE**

A.    Tenant shall look solely to Owner's estate and only in the land and Building of which the Demised Premises forms a part (or the proceeds thereof) for the discharge and satisfaction of Tenant's rights and remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Owner in the event of any default by Owner hereunder, and no other property or assets of Owner shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease, the relationship of Owner and Tenant hereunder or Tenant's use and occupancy of the Demised Premises.

B.    Notwithstanding anything in this Lease, at law or in equity to the contrary, it is expressly understood, acknowledged and agreed by Tenant that there shall at no time be or be construed as being any personal liability by or on the part of the individual members and/or principals (as the case may be) of Owner or Alma Realty Corp. under or in respect of this Lease or in any way related hereto or the Demised Premises.

67.    **INDEMNIFICATION**

A.    Tenant hereby agrees to defend, indemnify and hold Owner and Alma Realty Corp. harmless from and against any and all liability, damages, fines, suits, claims, demands and actions by or against anyone, and costs and expenses of any kind or nature (including but not limited to attorney's fees and expenses), due to, arising out of, based upon and/or connected with:

(i)    Any breach, violation or non-performance of any covenant, condition or agreement in this Lease stated and contained on the part of Tenant to be fulfilled, kept, observed and performed; and/or

(ii)    Any loss or damage to person or property occasioned by or arising out of or in connection with the use and occupancy of the Demised Premises by Tenant, its employees, agents, customers, invitees, contractors or subcontractors, or by any use or occupancy which Tenant may permit or suffer to be made of the Demised Premises; and/or

(iii)    Injury to, or death of, any person or persons (including but not limited to Tenant's customers and employees) occurring in or about the Demised Premises including, but not limited to, the sidewalks, curbs and parking lots adjacent to or in the vicinity of the Demised Premises.

B.    Tenant shall, at its own cost and expense, defend any and all actions, suits and proceedings which may be brought against, and Tenant shall pay, satisfy and discharge any and all judgments, orders and decrees which may be made or entered against, Owner and/or Alma

23

Realty Corp., and/or, its principals, disclosed or undisclosed, with respect to, or in connection with, any of the foregoing. The comprehensive general liability coverage maintained by Tenant pursuant to this Lease shall specifically insure the contractual obligations of Tenant as stated in this Article and/or as provided in this Lease.

C.     If Owner is made a party to any action, Owner shall be entitled to appear, defend or otherwise take part in the matter involved, at its election, by counsel of Owner's own choosing, at Tenant's cost and expense, provided such action by Owner does not limit or make void any liability of any insurer of Owner or Tenant hereunder in respect to the claim or matter in question.

D.     Neither Owner or Alma Realty Corp., nor any agent, contractor, invitee or employee of Owner shall be liable to Tenant for any injury or damage to Tenant or of any other person or for any damage to, or loss (by theft or otherwise) of, any property of Tenant or of any other person, irrespective of the cause of such injury, damage or loss, unless solely caused by or due to the gross negligence of Owner and/or Alma Realty Corp., its agents or employees occurring within the scope of their respective employment without negligence on the part of Tenant, it being understood that no property, other than such as might normally be brought upon or kept in the Demised Premises as an incident to the reasonable use of the Demised Premises for the purpose herein expressly permitted, will be brought upon or be kept in the Demised Premises.

68.     **CRIMINAL/CIVIL LIABILITY**

A.     If any failure by Tenant to comply with its obligations under this Lease subjects or could subject Owner, Owner's agent or any of the principals, partners, officers or directors of either thereof (hereinafter collectively referred to as ("Owner Parties") to criminal liability or reprimand, then Tenant shall, immediately upon receipt of notice or knowledge thereof, take diligent action to cure Tenant's default and to eliminate or mitigate any liability of Owner Parties, and if Tenant fails to do so, Owner may, without further notice, proceed to exercise all available remedies it may have hereunder including, but not limited to, those specified in Article 18 of the Standard Form.

B.     Notwithstanding anything to the contrary contained in this Lease, Tenant shall not conduct, maintain, tolerate or permit any activity in the Demised Premises which violates any provision of the Penal Code, the Nuisance Abatement Law or other provision(s) of any applicable municipal code, including but not limited to prostitution or other sexual activity, selling or purchasing of narcotics or counterfeit merchandise, etc. If the City or State of New York commences any action or proceeding which results in the imposition of fines and/or other penalties, monetary or non-monetary, against Owner, as a result of Tenant conducting, maintaining, tolerating or permitting any activity in the Demised Premises which violates any provision of the Penal Code, the Nuisance Abatement Law or other provisions of any applicable municipal code, regardless of an adjudication (or lack thereof) of the merits of the County's or City's claims, Owner, in its sole discretion, may terminate this Lease on ten (10) days' written notice to Tenant without opportunity for Tenant to cure. In addition, Tenant shall indemnify and hold Owner harmless in connection with any fines and/or penalties imposed on Owner by the City and reasonable attorney's fees and costs incurred by Owner in connection therewith. This provision shall survive expiration or earlier termination of this Lease.

69.     **MISCELLANEOUS**

A.     If the Fixed Rent hereunder shall commence or end on any day other than the first or the last day of a calendar month, the Fixed Rent for such calendar month shall be pro-rated accordingly.

24

B.   The Article headings of this Lease are for convenience only and are not to be given any effect whatsoever in construing this Lease.

C.   If Owner receives from Tenant any payment (hereinafter referred to as a "Partial Payment") less than the sum of the Fixed Rent or Additional Rent then due and owing pursuant to the terms of this Lease, Owner in its sole discretion may allocate such Partial Payment in whole or in part to any Fixed Rent or any Additional Rent or to any combination thereof, without such allocation being deemed an accord and satisfaction.

D.   This Lease shall be deemed to have been made in the County in which the Demised Premises is located, in the State of New York, and shall be construed in accordance with, and governed in all respects by the, laws of the State of New York. All actions or proceedings relating, directly or indirectly, to this Lease shall be litigated only in courts located within the County in which the Demised Premises is located.

E.   This Lease, or any memorandum hereof, may not be recorded without prior written consent of Owner, which consent may be withheld in Owner's sole discretion. Any recordation of this Lease or any memorandum hereof in contravention of this provision shall be deemed void and shall constitute a breach of a substantial obligation of Tenant's tenancy.

F.   Whenever any default, request, action or inaction by Tenant causes Owner to incur attorney's fees and other costs and expenses, Tenant agrees that it shall pay Owner for such fees, costs and expenses within ten (10) days of being billed therefore, which shall be deemed "Additional Rent."

G.   One or more waivers of any covenant or condition by Owner shall not be construed as a waiver of the further breach of the same covenant or condition herein contained.

H.   Owner shall not be in default of this Lease in any respect unless and until Tenant shall have given Owner written notice of the breach in accordance with Article 27 of the Standard Form and Article 51 of this Rider and within thirty (30) days after notice, Owner has not cured the breach or if the breach is such that it cannot reasonably be cured under the circumstances within thirty (30) days, has not commenced to proceed to cure such breach.

I.   Supplementing Article 13 of the Standard Form, which remains in full force and effect, upon reasonable notice by Owner, which may be verbal, Tenant shall grant access for the purpose of inspection and/or repairs to the Building for which access to the Demised Premises is deemed reasonable and appropriate in Owner's sole discretion, regardless of interruption of Tenant's business.  Notwithstanding the foregoing, Owner will make best efforts to minimize any such disruption to Tenant's business.

J.   Tenant expressly acknowledges and agrees that Owner has not made and is not making, and Tenant, in executing and delivering this Lease, is not relying upon, any warranties, representations, promises or statements, except to the extent that the same are expressly stated in this Lease or in any other written agreement which may be made between parties concurrently with the execution and delivery of this Lease and shall expressly refer to this Lease. This Lease and said other written agreement(s), if any, are hereinafter referred to as the "Lease Documents." It is understood and agreed that all understandings and agreements heretofore had in connection with Tenant's or Tenant's predecessor(s)' occupancy of the Demised Premises, written or otherwise, are merged into the Lease Documents, which alone fully and completely express the parties' agreement.  Tenant hereby enters into this Lease after full investigation, and neither party is relying upon any statement or representation not embodied in the Lease Documents made by the other.  Any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this contract in whole or in part, unless such executory agreement(s) are in writing and signed by the party against whom enforcement of this change, modification, discharge or abandonment is sought.

25

K.      This Lease shall be construed without regard to any presumption or other rule requiring construction (i) against the party causing this Lease to be drafted and/or (ii) due to any change, deletion and/or addition from any prior draft or drafts of this Lease. All terms and words used in this Lease, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.

L.      If (i) Owner commences any action or proceeding against Tenant, or (ii) Owner is required to defend any action or proceeding commenced by Tenant, in connection with this Lease and such action or proceeding is disposed of, by settlement, judgment or otherwise, favorably to Owner, Owner shall be entitled to recover from Tenant in such action or proceeding, or a subsequently commenced action or proceeding, Owner's reasonable attorney's fees and disbursements incurred in connection with such action or proceeding and all prior and subsequent discussions and negotiations and correspondence relating thereto.

M.      If any of the provisions of this Lease, or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Lease, and the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

N.      If, in connection with obtaining financing for the Building, the land thereunder or any leasehold interest, a bank, insurance company or other lending institution shall request reasonable modifications in this Lease as a condition to such financing, Tenant shall promptly execute and deliver to Owner an agreement acknowledging Tenant's consent thereto, provided that such modifications do not materially increase the obligations of Tenant hereunder or materially adversely affect the leasehold interest hereby created.

O.      Without incurring any liability to Tenant, Owner may permit access to the Demised Premises and open the same, whether or not Tenant shall be present, upon demand of any receiver, trustee, assignee for the benefit of creditors, sheriff, marshal or court officer entitled to, or reasonably purporting to be entitled to, such access for the purpose of taking possession of, or removing, Tenant's property or for any other lawful purpose (but this provision and any action by Owner hereunder shall not be deemed a recognition by Owner that the person or official making such demand has any right or interest in or to this Lease, or in or to the Demised Premises), or upon demand of any representative of the fire, police, building, sanitation or other department of city, state or federal governments.

P.      If Tenant, or any assignee or sublessee thereof is a partnership (comprised of two or more person, individually, or as the joint venturers or as co-partners of a partnership or a professional corporation or otherwise), any such partnership and/or such persons are referred to in this Article as ("Partnership Tenant") and if Tenant's interest in this Lease shall be assigned to a Partnership Tenant, the following provisions shall apply: (i) the liability of each of the parties comprising the Partnership Tenant shall be joint and several, and (ii) if Partnership Tenant shall admit new partners, all such new partners shall, by their admission to Partnership Tenant, be deemed to have assumed performance of all the terms, covenants, and conditions of this Lease on the Tenant's part to be observed and/or performed.

Q.      Owner reserves the right, at any time and from time to time during the term of this Lease, and without incurring any liability to Tenant to make such changes in or to the Building and/or the fixtures and/or equipment thereof, as well as in and/or to the street entrances, halls, passages, elevators, escalators, and/or stairways thereof, and/or to take a portion of the interior of space rented by the Tenant, including a portion of the basement (if applicable) up to ten percent (10%) of such space (and if a proportionate share of rented space is taken by Owner, Owner will deduct a proportionate percentage up to ten percent (10%) from the monthly rental payment), as Owner may deem necessary or desirable to its sole discretion, including, without limitation, constructing additional floors and other improvements thereto.  Owner may, during the progress

26

of any work, enter into the Demised Premises and store materials and/or equipment therein, and perform necessary work during business hours. Neither the performance of such work by Owner nor Owner's entry upon or storage of materials and/or equipment on the Demised Premises for the purposes herein stated shall constitute an actual or constructive eviction, partial or otherwise. Tenant's failure to provide Owner immediate access to the Demised Premises for such purposes shall constitute a material default under this Lease and, in addition to all of the other rights and remedies provided for hereunder arising out of or relating to such default (all of which are cumulative and not exclusive of each other), Owner shall be entitled to an amount equal to five hundred ($500.00) dollars per day for each day that Owner is denied access to the Demised Premises (which amount is liquidated damages and not a penalty).

R.     Notwithstanding anything to the contrary contained in the Standard Form or this Rider, Tenant shall not assert or otherwise be entitled to recovery from Owner for "business interruption," "loss of business," "loss of profit" or other consequential damages, regardless of the nature or circumstances underlying any such claims.

S.     It is specifically understood and agreed that this Lease is offered to Tenant subject to Owner's acceptance and approval and that Tenant has hereunto affixed its signature with the understanding that this Lease shall not in any way bind Owner or its agent unless and until such time as the same has been approved and executed by Owner and delivered to Tenant.

T.     This Lease constitutes the entire agreement between the parties. All prior conversations, communications, representations and writings between the parties or their representatives with respect to any aspect of this Lease or the Demised Premises are hereby extinguished, and the parties agree that this Lease shall constitute the entire agreement between the parties with respect to the Demised Premises. Any amendments hereto must be in writing and signed by the party against whom enforcement is sought.

U.     This Lease is binding upon and inures to the benefit of the heirs, executors, administrators, successors and assigns of the parties (provided any transfer or assignment of this Lease is first approved by Owner, and complies with the provisions of this Lease).

V.     Notwithstanding any term or provision contained elsewhere in this Lease, Owner may elect to terminate this Lease at any time, with or without cause, upon ninety (90) days written notice to Tenant. At the expiration of said ninety (90) day notice period, Tenant shall surrender, without objection of whatsoever nature, the Premises in broom-clean condition, reasonable wear and tear excepted, and otherwise in a fashion and manner satisfactory to Owner, in Owner's sole discretion. Any of Tenant's personal property, fixtures, trade fixtures and equipment remaining in the Demised Premises subsequent to surrendering the Demised Premises shall be deemed abandoned, and may be utilized or removed and/or disposed of by Owner as it deems fit, at Tenant's cost and expense. Tenant represents and warrants, to Owner's satisfaction, that no other person, including but not limited to any secured creditor, has any interest in any such personal property, fixtures, trade fixtures or equipment, and that Tenant has full authorization to: abandon said personal property, fixtures and equipment and/or authorize Owner to utilize same. Owner's remedies and Tenant's obligations pursuant to this Article are cumulative of all other remedies and obligations of Owner and Tenant respectively pursuant to other provisions of this Lease and applicable law.

W.     Tenant represents and warrants, to Owner's satisfaction, that no other person, including but not limited to any secured creditor, has any interest in any such personal property, fixtures, trade fixtures or equipment, and that Tenant has full authorization to: abandon said personal property, fixtures and equipment and/or authorize Owner to utilize same. Owner's remedies and Tenants obligations pursuant to this Article are cumulative of all other remedies and obligations of Owner and Tenant respectively pursuant to other provisions of this Lease and applicable law.

X.    Notwithstanding anything to the contrary contained in the Standard Form or this Rider, Owner may apply any payments received from Tenant to Tenant's account in any manner (e.g., toward rent and/or additional rent, then due rent and/or additional rent, oldest outstanding rent and/or additional rent, Lease Security, etc.) which Owner deems appropriate in Owner's sole discretion.  The acceptance by Owner of a check or checks drawn by others or any other manner of payment by anyone other than Tenant shall in no way affect Tenant's liability hereunder or be deemed an approval of any assignment of this Lease by Owner.

70.    **AIR RIGHTS**

A.    The Demised Premises are let to Tenant subject to all applicable laws, regulations, orders, covenants, restrictions and/or easements and to the reservation by Owner of all air rights above, around and about the Premises and the right to increase the size of the Building of which the Premises form a part or the buildings surrounding the same, based on the air rights appurtenant thereto.

B.    Tenant understands and agrees that Owner, and/or anyone claiming by, through or under Owner, may from time to time undertake alterations or additions to the Building of which the Premises form a part or any lands added thereto, construct additional buildings or improvements thereon and/or make alterations thereto, build additional stories on any of the same, construct multi-story, elevated or underground facilities therein, and construct roofs, walls, and/or any other improvements over, to or in connection with any part thereof. No easement for light or air is included in or appurtenant to the demise of the Premises or to Tenant's rights pursuant to this Lease.

C.    Owner shall have the sole right, without Tenant's consent to use, sell, assign, lease or otherwise dispose of any and all right, title and interest in and to any air rights and development rights relating to the premises and/or the land thereunder. In the event of any such use, sale, assignment, lease or other disposition thereof by Owner, Owner shall be entitled to receive all sums derived therefrom. Tenant shall not be deemed an interested party and as such required to waive any interest therein. Nonetheless, Tenant shall, upon request by Owner, promptly execute any waiver or other documents that Owner may deem necessary in connection with Owner's disposition of any such rights. Tenant hereby irrevocably appoints Owner the attorney in fact of Tenant for the purpose of executing any such waivers or other documents.

D.    Tenant shall not increase the height, bulk or floor area of the Premises or construct, place or erect anything on the roof of the Building of which the Premises form a part or install machinery, equipment or any other object on the roof of said premises or take any action which might or will adversely affect or reduce the amount of air rights or development rights which are applicable to said premises and to the land thereunder.

71.    **NON-DISCRIMINATION/EQUAL OPPORTUNITY**

A.    Tenant shall not discriminate against any employee, applicant for employment, servant, agent, independent contractor or any other person due to such person's actual or perceived race, color, religion, creed, handicap, ancestry, national origin, age, sex, sexual orientation, marital status, and/or gender identity.  Such affirmative action shall include, but is not limited to, any such person's: employment, promotion, demotion or transfer, accommodations, use of Tenant's facilities, recruitment or recruitment advertising, layoff or termination, rate of pay or other forms of compensation and selection for training.

B.    It shall be no defense that Tenant has delegated some of its employment practices to a union, training program or other source of recruitment which prevents Tenant from meeting its obligations as set forth in Section A of this Article.  However, if the evidence indicates that the Tenant was not aware or alerted to such acts of third-party discrimination or made a good faith effort to correct it, such factor shall be considered in determining appropriate sanctions.

28

C.   Further, Tenant shall comply with all state and federal laws prohibiting discrimination in hiring or employment opportunities. In the event of Tenant's non-compliance with the non-discrimination clause of this Lease or with any such laws, this Lease may be terminated or suspended, in whole or in part.

D.   Tenant shall include the provisions of this Article in every employment contract so that such provisions will be binding upon Tenant.

E.   The provisions of this Article are a substantial obligation of Tenant's Tenancy.

72.   **GUARANTY; REPRESENTATIONS AND WARRANTIES**

A.   At the request of Owner, Tenant shall furnish Owner a certificate, in a form reasonably requested by Owner, certifying to Owner the names and respective ownership interests of each person holding a beneficial interest in Tenant.

B.   Tenant represents and warrants to Owner that Tenant is a corporation duly organized and in good standing under the laws of the State of New York and that all action necessary for Tenant to enter into this Lease has been taken.

C.   Tenant represents and warrants to Owner that the person signing on behalf of Tenant is duly authorized to do so and in the capacity as designated in the signature line below, and Owner may rely on such representations and warranties.

D.   Each and every member or holder of a beneficial interest in Tenant shall, at Owner's election, execute and deliver a guaranty (the "Guaranty") of Tenant's Lease obligations. Notwithstanding the foregoing, this Lease shall be null, void and of no force or effect if: (i) Tenant or any member or holder of a beneficial interest in Tenant fails or refuses to execute the Guaranty, at Owner's request of same, simultaneously with execution of this Lease or (ii) Tenant fails to deliver Guaranty to Owner, in a timely manner and in a form acceptable to Owner. If and to the extent that this Lease is executed without a personal guaranty, Owner may demand that a personal guaranty of Tenant's Lease obligations be executed within ten (10) days from the date of same thereof. If Tenant fails to return a duly executed personal guaranty within such ten (10) day period, Owner can cancel this Lease upon ten (10) days' written notice to Tenant. All notice(s) served pursuant to this Article shall be sufficient in all respect if served by one or more of the methods prescribed in Article 51 hereof.

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner

**GVS PROPERTIES, LLC**
**Owner**

_____

By: Efstathios Valiotis, Managing Member

Witness for Tenant

**ISSA CHOUMAN**
**Tenant**

_____

By: Issa Chouman