

**ZACHARY W. CARTER**
*Corporation Counsel*

THE CITY OF NEW YORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**CHERIE N. BROWN**
*Assistant Corporation Counsel*
Phone: (212) 356-5054
Fax: (212) 356-3509
chebrown@law.nyc.gov

July 14, 2016

**VIA ECF**
Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    <u>Christine Alberto v. Michael Morales, et al.</u>, 15 Civ. 9449 (AJN)

Your Honor:

      I am an Assistant Corporation Counsel in the Office of Zachary W. Carter, Corporation Counsel of the City of New York, representing defendant City of New York and Police Commissioner William Bratton in the above-referenced matter. Pursuant to Your Honor's Order dated January 6, 2016, the parties are submitting the following joint letter containing the information required by the Court.

**Statement of the Nature of the Action and Principal Defenses**

      By way of background Plaintiff alleges *inter alia* two separate incidents where she was arrested by members of the New York City Police Department ("NYPD") on October 22, 2014 and November 10, 2014. The arrests arise out of two alleged robberies for which Plaintiff was identified by a complaining witness. There were arrest warrants issued prior to both arrests. Plaintiff brings claims for false arrest, false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, abuse of process and loss of enjoyment of life. Plaintiff also appears to bring a claim against the City of New York for municipal liability. It is Defendants' position that Plaintiff's federal claims should be dismissed because both arrests, which were made pursuant to lawful warrants, were privileged under New York law. *Andersen v. United States*, No. 98-CV-4782 (ADS), 2001 U.S. Dist. LEXIS 24469, at *33 (E.D.N.Y. July 20, 2001) ("'[a]n arrest is privileged if it is made pursuant to a lawful warrant'"). It is also Defendants' position that Plaintiff's state law claims should also be dismissed because her notice of claim was untimely.

**Jurisdiction and Venue**

Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §1331, this Court has jurisdiction of this action without regard to the amount in controversy. Venue is proper in that a substantial part of the events giving rise to the claim occurred within this judicial district. See 28 U.S.C. § 1391(b)(2).

**Status of the Case in Mediation**

Prior to mediation, Defendants wrote to Plaintiff's counsel setting forth an analysis of all claims and encouraging Plaintiff to withdraw the case because there were no viable claims. Nevertheless, the parties attended mediation on July 6, 2016 with the hope that additional information affecting the viability of Plaintiff's claim would be brought to light. Mediation, however, was unsuccessful.

**Plaintiff's Position on Whether an Initial Pre-Trial Conference Should be Scheduled**

Plaintiff respectfully requests that the Court schedule an initial conference to discuss next steps in this litigation. Plaintiff intends to seek the Court's permission to leave so that she can amend her Complaint pursuant to F.R.C.P. 15. F.R.C.P. 15 states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

Plaintiff acknowledges that some claims may not be viable against Defendants while she believes that some claims are viable against Defendants. As such, Plaintiff requests that the Court grant Plaintiff leave so that she may amend and supplement her complaint in order tomore fully plead the claims she feels are viable against the Defendants in this action. Specifically, Plaintiff would like to amend her Complaint so that she may specifically raise her Monell claims against each Defendants, so that the individual Defendants can respond accordingly. Monell v. Dep't of Social Services, 436 U.S. 658 (1978).

Plaintiff believes she her claims that the named Defendants violated her rights under the United States Constitution are viable for the reasons set forth below.

It is Plaintiff's position that she is entitled to relief for actions committed by Defendants City of New York, New York City Police (NYPD) Commissioner William J. Bratton, NYPD Officer Michael Morales, and other police officers who are captioned as "John Doe(s)" who have now been identified as Nicholas Estavillo and Conrad Perry. Alberto's alleges that the actions itemized in her Complaint are violations of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, by the United States Constitution, including its Fourth and Fourteenth Amendments. Specifically, to be free from unreasonable search and seizure. Plaintiff is seeking compensatory and punitive damages, an award of costs, interest, and attorney's fees, and such other relief that as the Court deems proper.

In Monell, the United States Supreme Court held that a local government is a "person" subject to suit under 42 U.S.C. § 1983 for deprivation of one's rights. It is Plaintiff's position that she properly plead that Defendants developed and maintained policies, procedures, customs,

and/or practices exhibiting indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights. It is also her position that the NYPD failed to train, supervise, discipline, or adequately screen its officers, which lead to actions committed by the Defendants that actually and proximately caused the deprivation of her rights.

A count of false arrest is centered upon an incident occurring on November 10, 2014 where NYPD officer Nicholas Estavillo arrested Ms. Alberto after Alberto made an appearance in front of Judge Jill Konviser. Judge Jill Konviser already knew that Ms. Alberto had retained the Law Offices of Montell Figgins to represent her in the New Jersey criminal matter and that she was going to New Jersey to surrender herself. Judge Konviser allowed Ms. Alberto to voluntarily surrender herself to New Jersey. The New Jersey criminal case was already being addressed in New Jersey at that time. If Ms. Alberto was a fugitive, Judge Konviser would have had state-employed court officers detain her and transfer her to New Jersey. This did not happen.

Rather, NYPD officer Nicholas Estavillo, took it upon himself to unnecessarily arrest Ms. Alberto and verbally harass her. The November 10, 2014 arrest conducted by Officer Nicholas Estavillo was needless and was only done to misrepresent Ms. Alberto as a fugitive as a form of continued harassment that had already been conducted by members of the NYPD. It is our position that this arrest was motivated out of malice. As an actual and proximate result of Officer Estavillo's actions, Alberto was confined to Riker's Correctional Facility for an additional two weeks. Alberto was conscious that she was being confined, she did not consent to the confinement, the confinement was not privileged, nor did the Manhattan District Attorney's Office charge Alberto with any additional crimes. Further, as detailed in the preceding paragraph, Judge Konviser did not determine Alberto to be a flight risk.

The Complaint lays out not only the dates where members of the NYPD of the arrested or attempted to arrest Ms. Alberto, but the shocking and overly aggressive nature of the harassment and lawlessness the NYPD officers displayed to Ms. Alberto and members of her family in pursuit of her arrest and after her arrest. This is the basis for Alberto's negligent and intentional infliction of emotional distress claims.

On August of 2014, arresting officers of the NYPD, including Defendant Conrad Perry, traveled to Rhode Island to carry out the arrest warrant. The arresting officers harassed members of Christine Alberto's family, including minors, in attempt to arrest Christine Alberto. The arresting officers were seen following members of Ms. Alberto's family in rental cars, and entered her cousin's house through threatening tactics to further threaten and interrogate two of Ms. Alberto's cousins, who were minors. These incidents, compounded with the harassment of and threats made to Ms. Alberto's father, stepmother, and five siblings by arresting officers, caused Ms. Alberto to fear for her safety. Ms. Alberto still fears for her safety.

Upon discovering Ms. Alberto's address, arresting officers traveled to her place of residence and demanded that she surrender herself to the NYPD at her place of residence. The arresting officers made no attempt to follow proper procedures to have the warrant validated in Rhode Island. Ms. Alberto refused to go with the arresting officers because they did not provide proof that they were members of the NYPD as they were dressed in plain clothing and did not provide badges. Ms. Alberto called her attorney at the time to find out what her rights were.

When Ms. Alberto's attorney informed her that arresting officers did not follow proper procedures and no record for her arrest was found, he informed her that she did not need to go with arresting officers. When Ms. Alberto asserted her rights, the arresting officers became agitated. This experienced, compounded by the aforementioned harassment and threats made against members of Ms. Alberto's family, caused Ms. Alberto to fear for her safety. Ms. Alberto still fears for her safety.

While waiting to be processed, on October 22, 2014, Defendant Michael Morales displayed a handcuffed Ms. Alberto around the fugitive department. The emotional distress resulting from this display and mockery compounded the fear and distress Ms. Alberto already felt from the July 2014 and August 2014 incidents.

During her confinement at Rikers, Ms. Alberto was erroneously placed in the section reserved for incarcerated persons above the age of 21. This made it difficult for her mother to find her in the system to release her at an earlier time. This incident coupled with the previous harassment, threats, and other actions exhibited by the arresting officers of the NYPD led Ms. Alberto to believe that arresting officers wanted to harm her, and therefore, she feared for her safety.

On November 10, 2014, arresting officers arrested and confined Christine Alberto to Rikers despite the fact that Ms. Alberto was free to go. Furthermore, Ms. Alberto had not been released and transported to New Jersey until two weeks after her November 10 detainment. While being transported to New Jersey on November 24, 2014, Christine Alberto overheard the two transporting New Jersey officers stating that the New York City Police Department did not inform them that they had someone to pick up until that same day. The arresting officer had no need to confine Ms. Alberto, and by doing so, had breached his duty to not maliciously prosecute Ms. Alberto.

The experiences of the harassment happening on July 2014 and August 2014 coupled with the needless and malicious arrest on November 10, 2014 illustrates that conduct by the NYPD, through its officers, unreasonably inflicted emotional distress as it caused her to fear for her safety while under NYPD custody as they had already exhibited aggressive behavior towards her. This situation made Ms. Alberto believe that arresting officers of the NYPD were maliciously going after her thus causing her to experience real fear for her safety and emotional distress as a consequence of such fear.

Due to the aforementioned incidences detailed above, Ms. Alberto argues that she has a viable claim against Defendants arresting officers under a theory of negligent and intentional infliction of emotional distress. The arresting officer's conduct unreasonably endangered Ms. Alberto's physical safety and caused her to fear for her own safety. In particular, Ms. Alberto maintains that there is ample evidence that her arresting officers breached a duty not to maliciously prosecute her and that this breach resulted in her incarceration. Furthermore, Ms. Alberto argues that an obvious and foreseeable result of this incarceration is the unreasonable endangerment of Alberto's physical safety or, at a minimum that the incarceration caused Ms. Alberto to fear for her safety.

As a result of the aforementioned incidents, Ms. Alberto has been diagnosed with clinical depression. Ms. Alberto has sought and is still receiving therapeutic treatment to deal with the debilitating fear, anxiety, paranoia, and clinical depression she still feels from her experience with the NYPD. The fact that her criminal charges were dismissed, thus vindicating her, has not lessened the severe emotional trauma she experiences as a result of the July 2014, August 2014, and November 10, 2014 incidents. Furthermore, due to the above-mentioned conditions, Ms. Alberto moved to another town in Rhode Island because she legitimately fears every police automobile, rental, or black car nearby as the arresting officers of the NYPD know of her former address.

**Defendants' Position on Whether an Initial Pre-Trial Conference Should be Scheduled**

Given that mediation was unsuccessful, Defendants respectfully request that the Court schedule an initial conference to discuss next steps in this litigation. Defendants intend to seek the Court's permission to move for Summary Judgment on all claims in the Complaint and would like to discuss with the Court, the possibility of doing so before the close of discovery. Limited discovery has uncovered that all arrests complained of in this Complaint were executed pursuant to valid warrants.

   a. **False Arrest**

Defendants submit that Plaintiff's Section 1983 claims for false arrest for both the October 22nd and November 10th arrests must fail because the existence of probable cause negates a false arrest claim. *See, e.g., Weyant v. Okst*, 101 F.3d 845, 852 (2d. Cir. 1996). In order to state a claim for false arrest, a plaintiff must prove all of the following four elements: (1) the defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Weyant*, 101 F.3d at 845, 852 n. 8. The presence of probable cause is a complete defense to an action for false arrest or false imprisonment. *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999).

Under New York law, "[a]n arrest is privileged if it is made pursuant to a lawful warrant." *Andersen v. United States*, No. 98-CV-4782 (ADS), 2001 U.S. Dist. LEXIS 24469, at *33 (E.D.N.Y. July 20, 2001) (citing *Collins v. Brown*, 514 N.Y.S.2d 538, 540 (N.Y. App. Div. 3d Dep't. 1987)); *see also St. John v. Marborough*, 558 N.Y.S.2d 332, 334 (N.Y. App. Div. 3d Dep't. 1990) ("An arrest warrant validly issued by a court having jurisdiction precludes an action for false arrest against the municipality and the police officers involved with its execution.") (citations omitted). Accordingly, Plaintiff's arrests on October 22, 2014 and November 10, 2014 are privileged and her claims for false arrest must fail.

   b. **Qualified Immunity**

Further, any member of the New York City police officer involved in this action would at least be entitled to qualified immunity for arresting Plaintiff based on the existing arrest warrants. Qualified immunity exists if it (1) it was objectively reasonable for the officer to believe that probable cause existed, or (2) officers of reasonable competence could disagree on whether there was probable cause. *See Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007).

- 5 -

In the instant matter, it was objectively reasonable for both arresting officers to believe there was probable cause to arrest plaintiff because there were valid arrest warrants issued by New York and New Jersey for Plaintiff's arrests.

    **c.** *Monell*

Moreover, the complaint fails to cite to any other incident of misconduct by officers sufficient to put the City on notice of any alleged deficiency in the training, supervision, or discipline of its police force, or from which the Court could infer a policy or custom of illegally arresting individuals. A single, isolated incident alleged is insufficient as a matter of law to give rise to an inference of a systemic informal practice that can support a municipal liability claim. *See, e.g., Abreu v. City of New York et al.*, 657 F. Supp. 2d 357, 361 (E.D.N.Y. 2009). Here, plaintiff has not pled sufficient facts to allege a *Monell* claim.

Further, without an underlying constitutional violation, there can lie no municipal liability claim against the City. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Plaintiff must also have injuries that are causally connected to the purported policy. *See Harper v. City of New York*, 424 Fed. Appx. 36, 38-39 (2d Cir. 2011). Here, plaintiff cannot show that her rights were violated because, as explained above, both arrests occurred pursuant to valid arrest warrants.

    **d. State Law Claims**

Defendants further submit that all purported state law are untimely. Under New York law, service of a notice of claim upon a municipality is a condition precedent to maintaining a tort action against the municipality or any of its officers, agents, or employees acting within the scope of their employment. N.Y. Gen. Mun. Law §§ 50-e and 50-i(1). The notice of claim must be served within ninety days after the claim arises, N.Y. Gen. Mun. Law § 50-e(1)(a), and the plaintiff must commence any tort action seeking, *inter alia*, damages for personal injury against the municipality, its officers, agents, servants or employees, within one year and ninety days "after the happening of the event upon which the claim is based." N.Y. Gen. Mun. Law § 50-i(1)(a); *Hyde v. Arresting Officer Caputo*, No. 98-CV-6722, 2001 U.S. Dist. LEXIS 6253, at *13 (E.D.N.Y. May 11, 2001). Here, Plaintiff alleges that she was falsely arrested on October 22, 2014 and November 10, 2014 and that a Notice of Claim was filed on June 12, 2015. This is more than 90 days from the date Plaintiff alleges she was falsely arrested. Thus, all state law claims are untimely.

**Conclusion**

Accordingly, the parties respectfully request that the Court schedule an initial conference in this matter at a date and time convenient for the Court.

(continued)

Thank you for your consideration in this regard.

                                          Respectfully submitted,

                                          /s/

                                        Cherie N. Brown
                                        Assistant Corporation Counsel
                                        Special Federal Litigation Division

Cc:    **<u>VIA ECF</u>**
        Montell Figgins, Esq.
        Law Offices of Montell Figgins
        17 Academy St., Suite 305
        Newark, NJ 07102
        Phone: (973) 242-4700
        montellesq@yahoo.com