UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

CHRISTINE ALBERTO,                                      Civil Action No. 1:15-cv-9449

                  Plaintiff,                    **COMPLAINT**

    -against-

                                              **JURY TRIAL DEMANDED**

THE CITY OF NEW YORK; NICHOLAS ESTAVILLO OF
THE NEW YORK CITY POLICE DEPARTMENT;
MICHAEL MORALES OF THE NEW YORK CITY POLICE
DEPARTMENT; CONRAD PERRY OF THE NEW YORK
CITY POLICE DEPARTMENT,

                  Defendants.
_____X

## COMPLAINT

       PLAINTIFF, CHRISTINE ALBERTO, an individual, seeks relief against DEFENDANTS THE

CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT ("NYPD"), and POLICE

OFFICERS MICHAEL MORALES, CONRAD PERRY and NICHOLAS ESTAVILLO, for violations of

her rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and by the United States

Constitution, including its Fourth and Fourteenth Amendments guaranteeing the right to be free from

unconstitutional and unreasonable search and seizure. Plaintiff seeks compensatory and punitive damages,

an award of costs, interest and attorney's fees, and such other and further relief as this Court deems

proper.

       The Complaint of the Plaintiff, through Montell Figgins, Esq., attorney for Plaintiff, respectfully

shows and alleges as follows:

## JURISDICTION AND VENUE

1.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and pursuant to the Fourth and

      Fourteenth Amendments to the United States Constitution. Subject matter jurisdiction is

conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action for redress for the violation of Plaintiffs' constitutional and civil rights.

2.   Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

3.   Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendant City of New York is administratively located within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## PARTIES

4.   Plaintiff, Christine Alberto (Alberto), resides at 5 Edgewood Avenue, Cumberland, RI 02864.

5.   Defendant City of New York is and was at all times herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City of New York assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant City of New York was at all times relevant herein the public employer of Police Officers Michael Morales, Conrad Perry, and Nicholas Estavillo.

6.   Upon information and belief, Defendants, Detective Michael Morales, Detective Conrad Perry, Detective Nicholas Estavillo (herein referred to as "NYPD officers" or "arresting officers"), resided in the City of New York, County of New York, State of New York, and were employed as police officers by the City of New York at the time the actions commenced. Defendants are sued in both their individual and official capacities.

## JURY DEMAND

2

7.   Plaintiff demands a trial by jury on each and every one of their claims pursuant to FED. R. CIV. P. 38.

## FACTUAL ALLEGATIONS

8.   Plaintiff repeats each and every allegation as if fully set forth herein.

9.   Plaintiff was the sole business owner of Rave PCS, LLC ("Rave PCS") and Rave PCS stores located at 554 Westside Ave., Jersey City, NJ 07304 ("Jersey City PCS") and 3834 Broadway, New York, NY 10032 ("New York PCS").

10.   Plaintiff incorporated Rave PCS of Jersey City 554 Corp. in Queens, New York. The Articles of Incorporation were filed on October 8, 2013.

11.   Business-related transactions from both store locations (including the buying of products and collection of monies therefrom) were deposited and deducted from the Rave PCS of Jersey City account, of which Plaintiff was the sole account holder.

12.   Issa Chouman (Chouman) alleged that Plaintiff burglarized the 3851 Broadway Rave PCS store on or about June 13, 2014 and on or about June 14, 2014 at approximately 11:00 PM. Chouman claimed or insinuated that he was the sole owner of the Rave PCS store.

13.   Chouman's statements alleging that Plaintiff burglarized Jersey City PCS and New York PCS by entering store premises and taking about $6,000.00 in cash and stealing cell phones were not verified by any evidence. The NYPD and the New York County District Attorney's Office ("NYCDA") simply accepted Chouman's version of events without verifying what exactly was taken and how much was taken from New York PCS. Absent this verification, it is unknown why the NYCDA decided to go forward with this case, since nothing shows that Plaintiff's actions met the elements of the crimes for which she would be later charged.

14.   NYCDA accepted purported documentation from Chouman as proof that Plaintiff had committed burglary and grand larceny. The documentation lacked any specificity needed to verify whether anything was actually purchased and whether anything had actually been taken from the

Broadway location.  The documentation consisted of unauthenticated and legally inadmissible information. Moreover, there were no identifiable dates on the document detailing when monies were received or withdrawn (i.e., business-related credits and debits).  The documentation did not contain information that delineated for cash or credit. The documentation did not show any deductions taken to verify the allegation that $6,000.00 in cash had been taken. The actual figure of what was taken is paramount to determining whether Plaintiff had committed burglary and grand larceny, as the felony of grand larceny has a specific monetary threshold that must be met in order for one to be charged with that crime. The grand larceny charge was paramount for NYCDA to bring forth its burglary charges against Plaintiff as she could not be charged with burglary absent the grand larceny charge.

15.    NYCDA accepted the aforementioned paperwork as showing itemized orders for the alleged stolen phones. The NYCDA accepted Chouman's statements that those phones were stolen from New York PCS. However, NYCDA failed to investigate whether cell phones were actually stolen from the location.

16.    NYCDA failed to verify who it was that ordered  the aforementioned documentation purporting to show theft and to verify which account paid for the phones. This is paramount to proving the crime of grand larceny as Plaintiff was the sole account holder of the account that had paid for the alleged stolen phones, thus the phones belonged to Plaintiff. Considering this fact, there was no possible way for Plaintiff to have committed larceny as she had a property interest and legal claim to the phones.

17.    NYCDA failed to properly investigate whether Chouman's allegations were truthful. Proper investigation would have found that Christine Alberto was a business associate and owner of the Rave PCS stores that were the subject of the alleged burglary and grand larceny crimes. Proper investigation would have found that Christine Alberto was the sole owner of Rave PCS of New Jersey 554 Corp., which is the entity that owned all the allegedly stolen phones. Proper investigation would have shown that Chouman was not the owner of this entity. Proper

investigation would have shown that Christine Alberto was the sole holder of the bank account that processed all payments, received all revenues, and paid all bills associated with this business. Proper investigation would have shown that Chouman's name did not appear anywhere on the business records. These facts vitiate any grand larceny charges against Christine Alberto since she had property interests in the alleged stolen goods. Since there is no merit to the grand larceny charges against Christine Alberto, Christine Alberto cannot be charged with burglary as she did not enter the premises with the intention of committing a crime.

18.  Despite Chouman's shaky evidence, and despite records showing that Christine Alberto had property rights to the stolen goods as the sole owner of Rave PCS of New Jersey 554, NYCDA initiated prosecutorial proceedings against Plaintiff and began proceedings to charge her with a two-count indictment for Burglary and Grand Larceny in the Third Degree (P.L. § 140.20) and (P.L. 155.35 (1)).

19.  Upon information and belief NYCDA presented Chouman as a witness at the grand jury hearings. Chouman falsely testified that Plaintiff was a former employee who had stolen monies and store property belonging to him. NYCDA also presented unauthorized and unverified paperwork as evidence to the Grand Jury so as to obtain an indictment against Plaintiff. Finally, NYCDA falsely presented Plaintiff as a an individual who was avoiding apprehension when in actuality she had no idea that any charges against her were pending.

20.  Plaintiff was never given the opportunity to assert her CPL 190.50 rights to testify before the grand jury because she had no idea that an indictment was being sought against her.

21.  Plaintiff was ultimately indicted on an N/A indictment.

22.  This lack of research, proper investigation, and blatant disregard of the facts led to Plaintiff being officially charged with Burglary in the Third Degree, in violation of Penal Law § 140.20, for knowingly entering and remaining unlawfully in the building of Chouman with the intent to commit a crime therein; Grand Larceny in the Third Degree, in violation of Penal Law § 155.35(1), for stealing property with the value exceeding $3,000 ($6,000 alleged).

23.    This improperly obtained indictment had later consequences for Plaintiff in regards to her bail amount and time spent in jail. Moreover, this indictment could have had consequences regarding Plaintiff's sentencing had she been convicted of the crimes for which she was indicted.

24.    The indictment resulted in a warrant being issued for Plaintiff's arrest.

25.    During this time, Plaintiff had moved from New York City to Rhode Island was unaware that prosecutorial proceedings against her were pending.

26.    On or about late July, 2014, NYPD officers, including Defendant Michael Morales, harassed and threatened Plaintiff's father andstep-mother, and five of her siblings, with deportation, among other threats, in order to locate Plaintiff. Arresting officers continued this harassment despite the fact that Plaintiff's father had communicated to the officers that he had no factual knowledge of Plaintiff's location at the time. It was not until Plaintiff's father spoke to Plaintiff that he ascertained her location.

27.    The continued harassment of Plaintiff's father and stepmother and of her five minor siblings was unwarranted as the officers could have questioned the alleged victim, Chouman, of Plaintiff's whereabouts, sincehe had knowledge of Plaintiff's residence in Rhode Island.

28.    In August 2014, NYPD officers, including Defendant Conrad Perry, traveled to Rhode Island to carry out an unlawful investigation and  to carry out an unconstitutional search and seizure of Plaintiff. NYPD officers, including Defendant Perry, were outside of their jurisdiction to effectuate the arrest. Defendant Perry was acting under color of law. Upon information and belief, it is a pervasive, longstanding practice or custom of the NYPD to have its officers to enter foreign jurisdictions to effectuate search and seizures so as to save time, money, and resources.

29.    Without following proper jurisdictional procedures, the NYPD officers, in attempting to search and seize Plaintiff, harassed members of Plaintiff's family, including minors, in an attempt to intimidate and coerce Plaintiff to allow them to bring her across state lines to New York City, where the NYPD officers had jurisdiction to effectuate an arrest.

30.    The NYPD officers, in plain clothing, were seen following members of Plaintiff's family in unmarked cars, and entered her cousin's house after utilizing threatening tactics to interrogate two of Plaintiff's cousins, who were minors, despite knowing the address of Plaintiff's Rhode Island residence. Defendants wanted to create an atmosphere of terror in order to scare Plaintiff to agree to travel with Defendants across stateliness so that they could effectuate an arrest in their home jurisdiction. It is upon information and belief that the actions above is a pervasive, longstanding practice or custom of the NYPD to have its officers to create this atmosphere of terror in order to effectly put individuals under duress and coerce them to "voluntarily" travel with the officers so that they can effectuate an arrest in their home jurisdiction—all without going through the proper procedures of foreign jurisdictions to save time, money, and resources.

31.    After creating this atmosphere of terror for Plaintiff, NYPD officers traveled to her place of residence and demanded that she go with them to New York City. Despite being in plainclothes and traveling in unmarked cars, the officers were acting under color of law to attempt to effectuate an arrest. Had Plaintiff voluntarily allowed herself to be escorted by Defendant NYPD officers back to New York, she would not have been allowed to move freely and was constructively under arrest despite Defendants having no legal police power to effectuate an arrest of Plaintiff in a foreign jurisdiction. The action described above is a pervasive, longstanding practice or custom of the NYPD.

32.    Plaintiff refused to go with the arresting officers because they did not provide proof that they were members of the NYPD or show her that they had legal authority to effectuate an arrest in Rhode Island. Plaintiff consulted her attorney, who informed her that the NYPD officers did not follow proper procedures and no record of a warrant being issued for her arrest in Rhode Island was found. Plaintiff's attorney then informed her that she was not required to go with the arresting officers. When Plaintiff asserted her rights, the arresting officers expressed agitation and anger.

33.     Subsequently, Plaintiff was ultimately incarcerated at a local jail for two (2) days without probable cause at the behest of NYPD officers.

34.     While Plaintiff spent two (2) days in jail, no one had officially presented her case to the State of Rhode Island. Therefore, Plaintiff was finally released and returned voluntarily with the NYPD. The NYPD officers' failure to follow proper procedure it is a pervasive, longstanding practice or custom of the NYPD.

35.     Plaintiff went to New York in October to confront her charges.

36.     Plaintiff was officially arrested on October 22, 2014 for the aforementioned charges. She was arraigned and subsequently incarcerated at Rikers Island Correctional Facility ("Rikers") for ten (10) days.

37.     While waiting to be processed and transported to Rikers, Plaintiff was handcuffed at the nearby police precinct. There, Defendant Michael Morales walked her around the fugitive department and displayed her to his fellow officers. He furthered this mockery by stating, "Princess decided to show up." Plaintiff suffered humiliation and fear due to Defendant Morales' behavior. It is upon information and belief that further and unreasonable humiliation and punishment of an individual by the members of the NYPD deem as "problematic"  is a pervasive, longstanding practice or custom of the NYPD. Plaintiff alleges that Defendant Morales behaved towards Plaintiff in this manner in order to retaliate against her for not "voluntarily" leaving Rhode Island with the NYPD officers.

38.     While at Rikers, Plaintiff was erroneously listed as 31 years-old and put in the section for incarcerated persons 22 years or older. This caused problems for Plaintiff's mother as she could not find Plaintiff in the system to post bail. Plaintiff alleges that members of the NYPD willfully makes an individual, who is labeled as "problematic", get lost in the system in order to needlessly to restrain her liberty for longer than is reasonable or necessary. Plaintiff alleges that this action is a pervasive, longstanding practice or custom of the NYPD, and is a way to abuse the process so as to further punish the individual as a form of retaliation.

39.     After ten (10) days at Rikers, Plaintiff posted her bail of $10,000 and was free for the following four days.

40.     At the same time, Plaintiff had an outstanding warrant for her arrest in New Jersey for charges relating to the aforementioned charges as Chouman also claimed she had burglarized and stolen goods at the Jersey City PCS, a business incorporated under Plaintiff's name.

41.     Upon information and belief, shortly after, Christine Alberto went to the Criminal Court of New York County for a motion appearance and discussed traveling to New Jersey to confront her related charges in New Jersey. The Honorable Jill Konviser let her go on her own free will as she had posted bail and the NYCDA did not charge Plaintiff with any other charges additional to the charges for which she had already spent ten days at Rikers.

42.     On November 10, 2014, at around 9:50 AM, inside 100 Centre Street, New York, NY, Defendant Officer Nicholas Estavillo, arrested and imprisoned Christine Alberto. Defendant apprehended Christine without charging her with any further offense and confined her to the Riker's Correctional Facility where she would ultimately be detained for two (2) weeks.

43.     Plaintiff attempted to explain to Defendant Nicholas Estavillo that Judge Konviser had already allowed her to go to New Jersey to confront her charges there on her own accord, but Defendant Estavillo stated "That's not how it works, Princess" and proceeded to arrest her. The use of the word "princess" made Plaintiff feel as if members of the NYPD were conspiring against her to ensure that the pretrial process and extradition would be done in a manner that is most harmful to her. Plaintiff alleges that further and unreasonable humiliation and punishment of an individual by the members of the NYPD deem as "problematic" is a pervasive, longstanding practice or custom of the NYPD.

44.     On November 10, 2014, Plaintiff made an appearance in the Criminal Court of New York County, Part AR 3, in front of the Honorable Denise Dominguez, who initiated extradition proceedings.

45.     After needlessly spending two (2) weeks at Rikers, Plaintiff was transported to New Jersey. There she overheard the two New Jersey transporting officers state that they were not informed that Plaintiff was waiting to be transported until the day of transportation. Plaintiff alleges that members of the NYPD, including Defendant NYPD officers, purposefully held her for as long as possible as a way to retaliate against Plaintiff.

46.     During this time, the arresting officers marked Plaintiff as a problematic individual, which lead to Plaintiff being subject to disproportionately harsh treatment by other officers in New Jersey. Due to this marking, Plaintiff had uncommon problems with posting bail despite following the correct procedures and having the funds to pay bail. Plaintiff alleges that further and unreasonable excessive punishment of an individual that the NYPD labels as "problematic" is a pervasive, longstanding practice or custom of the NYPD.

47.     Ultimately, in the above matter, Christine Alberto was granted a dismissal of her burglary and grand larceny charges by Judge Konviser.  The court also exonerated Christine Alberto of her bail money. Therefore, the above proceedings were terminated in Plaintiff Christine Alberto's favor.

48.     Judge Konviser stated that "the People elicited testimony that suggested [the Plaintiff], who was not located at the address provided on her driver's license, was attempting to avoid apprehension" when that was not the case and that "the integrity of the proceedings was impaired and the defendant prejudiced as a result."

49.     As a consequence of the actions of Defendants, Plaintiff lost her job as a caretaker in Rhode Island, as she now had a criminal record that was not cleared until many months later. Plaintiff could not obtain work until July 2015.

50.     As a consequence to the actions of Defendants, Plaintiff continues to suffer from anxiety, paranoia, and clinical depression. Plaintiff is currently going through therapeutic treatment due to the trauma experienced during the aforementioned events.

**CAUSES OF ACTION**

**FIRST COUNT: FALSE ARREST**

10

**DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENS
AND 42 U.S.C. §1983**

51.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein. Specifically, Plaintiff re-alleges ¶¶ 26-32, 34, 37-38, 42-43, and 46.

52.     The conduct and actions of Defendants arresting officers, acting in concert and under color of law, in authorizing, directing and/or causing the deprivation of Plaintiff's constitutional right to be free from unreasonable search and seizure of her person guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

53.     Arresting officers, including but not limited to Defendant Conrad Perry, in plain clothing attempted to effectuate an unreasonable and unconstitutional search and seizure of Plaintiff in her home in Rhode Island, outside of the their jurisdiction.

54.     The NYPD officers, as part of their longstanding custom and practice, made no attempt to follow the proper procedures in Rhode Island to effectuate the New York-issued warrant when initially attempting to search and seize Plaintiff.

55.     The arresting officers, in plain clothing, were seen following members of Plaintiff's family in unmarked cars.

56.     In attempting to search and seize Plaintiff, Defendant NYPD officers, including Defendant Perry, harassed, intimidated, threatened, and coerced members of Plaintiff's family, including minor children.

57.     The arresting officers, including Defendant Perry, entered the homes of Plaintiff's family after utilizing threatening tactics to further threaten and interrogate two of Plaintiff's cousins, who were minors.

58.     Members of Plaintiff's family complied with Defendants' demands that they tell Defendants Plaintiff's whereabouts while under duress.

59.    After retrieving Plaintiff's address and creating an atmosphere of terror for Plaintiff, Defendants attempted to circumvent the law by traveling to her place of residence and demanding that she voluntarily surrender herself to the NYPD, so that they could effectuate a legal arrest in their proper jurisdiction.

60.    Defendants demanded that Plaintiff allow them to come into her home.

61.    Plaintiff refused to comply with Defendants' demands because they did not provide proof that they had a legal right to arrest her outside of their jurisdiction.

62.    Plaintiff called her attorney at the time to find out what her rights were. Plaintiff's attorney informed her that Defendants did not follow proper procedures and no record of a warrant being issued for her arrest in Rhode Island was found, meaning that she did not need to go with arresting officers.

63.    When Plaintiff asserted her rights, Defendants expressed agitation and anger.

64.    As a direct and proximate result of the foregoing, Plaintiff was (1) subjected to great physical and emotional pain and humiliation, (2) deprived of her liberty, and (3) otherwise damaged and injured.  Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein, entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Plaintiff has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.


**SECOUND COUNT: HARASSMENT AND MISCONDUCT**

**DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983**


65.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein. Specifically, Plaintiff re-alleges ¶ 37.

66.    While waiting to be processed and transported to Rikers, Plaintiff was handcuffed at the nearby police precinct. There, Defendant Michael Morales walked her around the fugitive department and displayed her to his fellow officers. He furthered this mockery by stating, "Princess decided to show up."

67.    The conduct and actions of Defendants, acting in concert and under color of law, in authorizing, directing, and/or causing Plaintiff to be harassed and humiliated, was (1) excessive and unreasonable, (2) done intentionally, willfully, maliciously, and with deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, (3) done without lawful justification or reason, and (4) designed to cause specific and serious physical and emotional pain and suffering, all in violation of Plaintiff's rights as guaranteed under 42 U.S.C. § 1983, and in violation of state and municipal regulations concerning the interaction of law enforcement officers with individuals in their custody, including the right to be free from an unreasonable seizure of her person and the right to be free from the use of excessive, unreasonable, and unjustified harassment.

68.    Defendant Morales willfully, intentionally and knowingly deprived Plaintiff of her rights, privileges, and immunities guaranteed by the laws of the United States, including 42 U.S.C. § 1983.

69.    As a direct and proximate result of the foregoing, Plaintiff was subject to great physical and emotional pain and humiliation, was deprived of her liberty, and was otherwise damaged and injured.

**THIRD COUNT: FALSE ARREST AND FALSE IMPRISONMENT**

**DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENS
AND 42 U.S.C. §1983**

70.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein. Plaintiff specifically re-alleges ¶¶ 41-43.

71.     On November 10, 2014, Defendant NYPD officer Nicholas Estavillo apprehended Plaintiff inside the New York City Criminal Court located at 100 Centre Street, New York, New York. Plaintiff had previously posted bail of $10,000 for her release. Plaintiff made an appearance in New York Criminal Court in front of Judge Konviser. Judge Konviser released Plaintiff, as she had already posted her bail and was not determined a flight risk. NYCDA did not add any other charges to the charge for which she had already spent ten (10) days at Rikers.

72.     Judge Konviser knew of Plaintiff's related charges in New Jersey and allowed Plaintiff to go to New Jersey to confront those charges on her own volition.

73.     Plaintiff attempted to explain to Defendant Nicholas Estavillo that Judge Konviser had already allowed her to go to New Jersey to confront her charges there on her own accord, but Defendant Estavillo stated "That's not how it works, Princess" and proceeded to arrest her. The use of the word "Princess" made Plaintiff feel as if members of the NYPD were conspiring against her to ensure that the pretrial process and extradition would be done in a manner most harmful to her. The further and unreasonable humiliation and punishment of individuals, such as the Plaintiff, by the members of the NYPD because they deemed her as "problematic" is a pervasive, longstanding practice or custom of the NYPD.

74.     The conduct and actions of the NYPD, acting under color of law, in authorizing, directing, and/or causing Plaintiff to be needlessly arrested, was (1) excessive and unreasonable, (2) done intentionally, willfully, and maliciously, with deliberate indifference and/or a reckless disregard for the natural and probable consequences of their acts, (3) done without lawful justification or reason, and (4) designed to cause specific and serious physical and emotional pain and suffering, all in violation of Plaintiff's rights as guaranteed under 42 U.S.C. § 1983, and under the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable seizure of her person and the right to be free from the use of excessive, unreasonable, and unjustified force.

75.     As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Plaintiff has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.

### FOURTH COUNT: MUNICIPAL LIABILITY FOR CONSTITUTIONAL VIOLATIONS

### *MONELL* CLAIM AGAINST THE CITY OF NEW YORK – 42 U.S.C. §1983

76.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein. Plaintiff specifically re-alleges ¶¶ 26-32, 34, 37-38, 42-43, and 46.

77.     42 U.S.C. § 1983 prohibits the deprivation, under color of state law, of rights secured under the United States Constitution to every person.

78.     Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

79.     The CITY OF NEW YORK directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of Defendants NYPD officers. The conduct of Defendant arresting officers was a direct consequence of policies and practices of Defendant CITY OF NEW YORK.

80.     Defendant CITY OF NEW YORK, through its police department, developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

81.　At all times relevant to this complaint, Defendant CITY OF NEW YORK, acting through the NYPD, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained herein.

82.　At all times relevant to this complaint, Defendant CITY OF NEW YORK, acting through its police department and through the individual Defendants NYPD officers, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for Plaintiff's exercise of her Fourth Amendment and Fourteenth Amendment right to be free from unreasonable search and seizure. Upon information and belief, Defendant CITY OF NEW YORK planned and implemented a policy, practice, custom and usage of encouraging individual law enforcement agents, including individual police officers, to illegally initiate arrests by circumventing proper procedures outside of their jurisdiction through intimidation, coercion, harassment, and threats. The CITY OF NEW YORK consciously disregarded the illegality and unconstitutionality of such actions, use of harassment and misconduct, and retaliation in order to unreasonably punish and suppress any individual who exercises his/her Fourth Amendment and Fourteenth Amendment right to be free from unreasonable search and seizure.

83.　The existence of these unconstitutional customs and policies, specifically as it relates to any individual who asserts his/her Fourth and Fourteenth Amendment right to be free from unreasonable search and seizure, is evidenced by countless repeated occurrences of similar wrongful conducted.

84.　Additionally, the CITY OF NEW YORK knew or should have known, more specifically of Defendant arresting officers' propensity to engage in misconduct of the type alleged herein.

85.　Despite its knowledge of such incidents of prior misconduct, the CITY OF NEW YORK failed to take remedial action.

86.    It was the policy and/or custom of the CITY OF NEW YORK to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated or encouraged by the CITY OF NEW YORK, including the incidents listed above.

87.    It was the policy and/or custom of the CITY OF NEW YORK to inadequately train, supervise, and discipline its police officers, including Defendant arresting officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service or re-training of officers who were known to have engaged in police misconduct.

88.    Plaintiff had the clearly established right to be free from harassment and misconduct and unreasonable search and seizure at the time of the complained conduct.

89.    Defendants knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

90.    The acts or omissions of Defendant CITY OF NEW YORK as described herein intentionally deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

91.    Defendant City of New York was, at all times relevant, policymakers for the New York City Police Department, and in that capacity established policies, procedures, customs, and/or practices for the same.

92.    Defendant CITY OF NEW YORK created and tolerated an atmosphere of lawlessness, and have developed and maintained a long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner accounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

93.    It is a policy, procedure, custom, and/or practice for officers of the NYPD, employees of Defendant CITY OF NEW YORK, to go forward with unreasonably and illegally seizing individuals outside of their jurisdiction without following proper procedures.

94.   It is a policy, procedure, custom, and/or practice for officers of the NYPD to threaten, coerce, harass, and intimidate individuals to initiate unlawful search and seizures to circumvent proper procedures.

95.   It is a policy, procedure, custom, and/or practice for officers of the NYPD to mark certain individuals for retaliation to make their ability to post bail and be free from excessive imprisonment near impossible.

96.   In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes and how to properly effectuate an arrest of an individual who resides outside of its jurisdiction, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result. In the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

97.   The deliberately indifferent training and supervision provided by Defendant CITY OF NEW YORK through its police department were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

98.   As a result of the above described policies and customs, Defendant CITY OF NEW YORK, through Defendants NYPD officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated or encouraged.

99.   The wrongful policies, practices, customs, and/or usages complained herein, demonstrated a deliberate indifference on the part of policymakers of the CITY OF NEW YORK to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of Plaintiff's rights herein.

100.  Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to redress Defendants' above described ongoing deliberate indifference in policies, practices, habits, customs, usages, training, and supervision with respect to the rights described herein, and with

respect to the ongoing policy and/or practice of failing to investigate or appropriately handle complaints of the same, which Defendants have no intention for voluntarily correcting.

101.    As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Plaintiff has incurred special damages, including psychiatric related expenses and may continue to incur further psychiatric or other special damages related expenses, in amounts to be established at trial.

## **PRAYER FOR RELIEF**

Plaintiff, Christine Alberto, prays that this Court enter judgment for Plaintiff and against each of the Defendants and grant:

A.  Compensatory and consequential damages, including damages for negligent infliction of emotional distress, loss of enjoyment of life, and intentional infliction of emotional distress on all claims allowed by law in an amount of $500,000 to be determined by trial;

B.  economic losses on all claims allowed by law;

C.  special damages in an amount to be determined by trial;

D.  punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

E.  attorneys' fees and costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F.  pre- and post-judgment interest at the lawful rate; and,

G.  any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

     Respectfully submitted this 26 day of October 2016

/s/ Montell Figgins, Esq.        
Montell Figgins, Esq.
The Law Offices of Montell Figgins
17 Academy St., Suite 305
Newark, NJ 07102
(973) 242-4700 (t)
(973) 242-4701 (f)
